Hayes v. State.

# HAYES *v*. STATE.

## (*Knoxville.* September Term, 1914.)

1. **HOMICIDE.** Prosecution. Evidence.
   Evidence *held* to warrant a conviction of assault with intent to commit voluntary manslaughter. (*Post, pp.* 665, 666.)

2. **CRIMINAL LAW.** Evidence. Admissibility.
   In a prosecution for assault with intent to commit murder, evidence of the number and age of accused's children was properly excluded. (*Post, p.* 666.)

3. **HOMICIDE.** Evidence. Admissibility.
   Where the prosecuting witness, who was shot, accompanied another onto accused's premises, evidence that accused had a grudge and wished to kill the witness' companion is admissible. (*Post, p.* 666.)

4. **CRIMINAL LAW.** Appeal. Presentation of grounds of review in court below. Necessity.
   Errors in the charge, not pointed out by the motion for new trial, cannot be reviewed. (*Post, pp.* 666-668.)

5. **CRIMINAL LAW.** Appeal. Sufficient presentation of errors.
   A ground in a motion for new trial that the verdict should be set aside because of the jury's misconduct is too general to present that question for review on appeal. (*Post, p.* 668.)

6. **CRIMINAL LAW.** Appeal. Bill of exceptions.
   Where evidence heard on the motion for new trial is not preserved in a bill of exceptions, the refusal of the motion cannot be reviewed. (*Post, p.* 668.)

Case cited and approved: Odeneal v. State, 128 Tenn., 60.

---

### FROM GRAINGER.

---

Appeal from the Circuit Court of Grainger County. —G. Mc. HENDERSON, Judge.

W. T. COLEMAN, for appellant.

WM. H. SWIGGART, JR., assistant attorney-general, for the State.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Plaintiff in error was indicted in the circuit court of Grainger county, charged with an attempt to commit murder upon the person of one Clyde Hopper. He was convicted of an assault with intent to commit voluntary manslaughter, and sentenced to a term of one year's imprisonment in the State penitentiary. From this judgment he has appealed and assigned errors.

The first error assigned is that the evidence does not sustain the verdict.

The genesis of the difficulty was the act of plaintiff in error in burning some wood belonging to one J. W. Daniel. The wood was lying in a field belonging to one Bird. Plaintiff in error was clearing this field for Bird, and Daniel had bought, for firewood, some of the wood which had been cut down, and it seems had cut it up into fire lengths, but had not removed it. Plaintiff in error wanted to finish his clearing, and, after repeatedly asking Bird to have Daniel's wood removed, set fire to the other wood in order to effect his clearing, and, in doing this, burnt a part of Daniel's wood. On

the Sunday before the difficulty, Daniel, finding plaintiff in error in the clearing, accosted him and talked in a general way about the burning of the wood, and told him he wanted to see him the next day, asking if he would be at home, and receiving a reply in the affirmative, said that he ''would be along.'' Plaintiff in error's version of the matter is that Daniel said he wanted to see him at home ''and nowhere else.'' The burden of proof in this court, after conviction below, is on the plaintiff in error; and we must hold that he has failed to carry that burden, and that Daniel's version of the matter must be treated as the true one.

On the next day Daniel arrived in front of plaintiff in error's home. He was in a wagon, accompanied by Bud Stubblefield and Clyde Hopper. Thirty or forty yards behind were Guy Daniel, the son of J. W. Daniel, riding a horse, and George Stubblefield walking by his side. These two were discussing a proposed trade for a filly. J. W. Daniel, seeing plaintiff in error in his yard, called him to come down to the wagon. Plaintiff in error replied that he had no business with Daniel. Thereupon Daniel came up into plaintiff in error's yard and began to talk to him about the wood, and demanded $5.50 payment for it. Plaintiff in error refused, claiming that Bird was the man responsible. By this time Guy Daniel had ridden up into the yard near the two men, and suggested to his father that he give plaintiff in error some time to pay it in, and plaintiff in error replied that he would take his own time. Daniel said that he would take plaintiff in error with

a warrant. When Guy Daniel made his remark, J. W. Daniel told him in effect that he would attend to the matter. However, Guy Daniel replied, addressing his remark to plaintiff in error, that "if he didn't pay for the wood he was a s— o— b—." Upon hearing this, plaintiff in error said to Guy Daniel, "I'll kill you," and immediately turned, went into his house, and came back with a gun. While he was gone into the house, George Stubblefield took Guy Daniel's horse by the bridle and led him away. Guy Daniel dismounted from his horse and retired to the south side of the road, the side farthest from plaintiff in error. When plaintiff in error came out with the gun, he pointed it at Guy Daniel. When this occurred, J. W. Daniel expostulated with him. Clyde Hopper got out of the wagon and advanced to the side of the road some eight or ten feet from plaintiff in error, and said, "Don't do that." The yard was about three feet higher than the road. Clyde Hopper had placed his foot upon the bank with the purpose of stepping into the yard, and, as he was leaning over in the effort to make the ascent, plaintiff in error deliberately fired at him, striking him on the top and back of the shoulder. Clyde Hopper was not endeavoring to injure plaintiff in error in any way. This shooting of Clyde Hopper is the crime for which plaintiff in error was arraigned and convicted. After the shooting of Clyde Hopper the difficulty ended. His friends removed him.

The foregoing is the substance of the evidence as given by J. W. Daniel, Clyde Hopper, and Bud Stub-

blefield.  Plaintiff in error's version of it is different, but he is overborne by the weight of evidence.

According to his version, J. W. Daniel came into the yard with a big stick in his hand, "walked right up into plaintiff in error's face," as he expresses himself, and only retired when he saw a friend of the latter, one Sterl Collins, sitting near by.  Plaintiff in error says that Daniel then demanded the $5.50 already mentioned for the wood, and that he refused to pay it; that when Guy Daniel interposed, suggesting time, he replied that he would take his own time, and told the parties he did not want to have any trouble, and that he wanted them to get out of his yard; that Guy Daniel replied "they'd get out whenever they got ready;" that he said, "I'll get you ready," and went into the house to get his shotgun; that, when he returned with the gun, Guy Daniel had retired and was on the ground, placing his horse between himself and the plaintiff in error; that J. W. Daniel, George Stubblefield, Bud Stubblefield, and Clyde Hopper all rushed towards him; that Clyde Hopper said, "I will kill the damned s— o— b—," and was stooping down for the purpose of getting a stone to throw at plaintiff in error; that when he shot Clyde Hopper he fired the shot because he thought he was in imminent danger from the stone which he believed would be immediately thrown by Hopper.

The jury had this conflicting evidence before them, and gave credence to that offered by the witnesses for the State.  We cannot say that the preponderance is

with the plaintiff in error, but must say that it is against him.

Under these facts, plaintiff in error got off very well indeed with a verdict for assault with intent to commit voluntary manslaughter, and with the light sentence of one year.

It is next insisted that the court erred in not permitting plaintiff in error to prove the number of children he had, and their respective ages. Of course this was wholly irrelevant, and there was no error in this matter.

It is next insisted the court erred in permitting the State to prove, by one Henry Whitehead, in rebuttal, over the objection of plaintiff in error, that, in a conversation he had with the latter, the witness heard him say that he wanted to buy a shotgun, and a quick shooting gun, and that he wanted to kill a man, using a vile epithet, with whom he had some trouble, or something of that kind. We think the evidence was competent, inasmuch as the examination of the witness in that connection showed clearly that he had in mind Guy Daniel, who, as he believed, had shot into his house about five or six weeks prior to this time. Plaintiff in error's animus towards Guy Daniel was competent to explain his conduct on the occasion of the difficulty in the present case.

Another error is assigned on the testimony of John Staily and must be overruled on the same ground.

It is assigned as error that the court erroneously charged the jury as follows:

"I instruct you, gentlemen, that if defendant was about to shoot Guy Daniel unlawfully, or was making demonstrations with the gun that indicated to those present that he was about to shoot Guy Daniel unlawfully, those present had a right to call to the defendant not to so shoot Guy Daniel, and to rush toward defendant in a peaceful effort to try to prevent defendant from unlawfully shooting Guy Daniel, and defendant could not lawfully shoot Clyde Hopper or either of those approaching him in a peaceful manner and only in an effort to try to prevent defendant from unlawfully shooting Guy Daniel, and when defendant, situated as he then was, could and did clearly see and understand their purpose."

It is sufficient to say that this part of the charge was not specified in the motion for new trial; however, we do not think the jury could have been misled by the rather equivocal language in the last clause. That clause could not have been reasonably understood by the jury to mean that the defendant did in fact clearly see and understand the purpose of the other parties to the transaction. The word "when" in the clause "and when defendant" from the context evidently meant "if," and must have been so understood by the jury. When this word is taken in connection with the immediate context, and also with the rest of the charge, showing that the court did so intend the word to be understood, it is seen that the court left the decision of all of the facts to the jury. However, as stated, the matter was not called to the attenion of the trial

judge on the motion for a new trial, and for that reason, if for no other, cannot be re-examined here.

Finally it is insisted that a new trial should be granted, because of misconduct on the part of the jury. This misconduct is not sufficiently indicated in the motion for a new trial. That part of the motion reads: "The verdict of the jury is void, and should be set aside because of the misconduct of the jury." The motion for a new trial should specify, at least in some general way, the particular misconduct of the jury, so as to call the attention of the trial judge directly to it. However, it does appear in the record that the trial judge heard evidence upon this point, and that evidence specified the particular misconduct complained of, and in such a case we would not permit the generality of the motion for new trial to deprive the plaintiff in error of a re-examination of the matter in this court. But there is another point in this connection which will prevent such a re-examination. That point is: It does not appear upon the bill of exceptions that we have before us all of the evidence which was introduced on the subject before the trial judge. Such being the case, there can be no re-examination of the matter here. *Odeneal* v. *State,* 128 Tenn., 60, 157 S. W., 419.

The result is the judgment of the trial court must be affirmed.