## J. B. BRIGGS v. CLAWSON BROTHERS, et al.

Middle Section.   April 28, 1928.

Petition for Certiorari denied by Supreme Court, December 8, 1928.

Ed. T. Seay, of Nashville, and P. E. Cox, of Franklin, for plaintiff in error, Trust Co.

W. J. Smith, and J. C. Eggleston, of Franklin, for defendant in error, Briggs.

CROWNOVER, J.   This was an action to recover damages for the injury and killing of cattle, and for the burning over of a clover field and straw stack.   The suit was originally brought before a Justice of the Peace and appealed to the circuit court of Williamson county, where it was tried by the judge without a jury, and resulted in a judgment for $658.87 in favor of the plaintiff Briggs.   The defendant, Nashville Trust Company moved the

court for a new trial, which was overruled, and it has appealed in error, and has assigned errors, and insists that there was no evidence to support the verdict: (1) Because the Trust Company had legally leased the railroad track to Clawson Brothers and had no control over the trains operated by the lessees. (2) Because the lessees, Clawson Brothers' contract had terminated in March before the hay and straw were burned in July, and the operation of the engine and train was without their knowledge and consent. (3) There was no evidence that the cattle were killed on an unfenced track. (4) There was no evidence that the train burned the hay and the straw.

The facts necessary to be stated are that the Middle Tennessee Railroad Company was organized sometime about the year 1907 and built a railroad forty-one miles long from Franklin to Mt. Pleasant. It executed a mortgage on its track and other property to secure its mortgage bond creditors, and the Nashville Trust Company was named as trustee in the mortgage. When the mortgage matured default in payment was made and the Railroad Company on October 1, 1920, delivered possession of the railroad track and other property to the Trust Company as trustee under the mortgage for foreclosure, and surrendered its charter to the State of Tennessee. Shortly thereafter Clawson Brothers as a partnership proposed to rent the railroad track for the purpose of hauling their phosphate rock from Mt. Pleasant to Franklin, Tennessee, and proposed to pay a certain price for each trip over the road. The Trustee entered into a tentative agreement and then filed a bill in chancery court against Clawson Brothers asking that it (the trustee) be authorized to rent the railroad track, tools, etc., to Clawson Brothers, and later a decree was entered authorizing the rental contract, which was entered into by the trustee and Clawson Brothers, who executed a $10,000 bond for the faithful performance of the contract and to save the trustee harmless in any damage suits that might arise by reason of the negligent operation and use of the property by the lessees. Clawson Brothers took possession of the track and operated engines and trains leased from other parties. And in December, 1920, or January, 1921, an engine being operated over said track ran into the plaintiff's cattle, killing one and injuring two others; and in July, 1921, the engine on one occasion set fire to the clover field, containing twenty acres, and at another time set fire to the straw stack, which property was owned by the plaintiff Briggs, and was entirely destroyed. The proof showed that the cattle was worth $80 or $90 each, and that the clover field contained about twenty acres and would have made a ton to the acre, which was worth $25 to $30 per ton, and

that the straw stack contained about fifty to sixty tons of straw, valued at $10 to $12 per ton.

· After a careful examination of the record and the authorities we are of the opinion that the assignments of error should be overruled. The first proposition is that the Trust Company had legally leased the railroad track to Clawson Brothers and had no control over the trains operated by the lessees. If this were true then the Trust Company is not liable, but we cannot assent to the proposition that the lease to Clawson Brothers was authorized by statute and was legal.

Our statutes provide that all corporations may lease or dispose of their property and franchise to other corporations authorized to carry on such business as is authorized by the charter of the lessor corporation, when made by the board of directors, approved or authorized by a three-fourths majority in amount of capital stock of the lessor corporation present and voting. See Acts of 1887, chapter 198. Shannon's Code, sections 2043-2045; Acts of 1881, chapter 9. and Acts of 1891, chapter 61, Shannon's Code, 1540.

It will thus be seen that the corporation is authorized to lease its property and franchises only to corporations engaged in or carrying on, or authorized by its charter to carry on the same general business as is authorized by the charter of the lessor corporation, and there is nothing in the statutes authorizing a railroad corporation to lease out its property and franchises to individuals or partnerships not authorized to carry on such business. A statute authorizing a lease to another railroad company does not authorize a lease to an individual. See 33 Cyc., 392. Both the lessor and the lessee must have power to make the lease or it will not be valid. See L. & N. Railroad Co. v. Kentucky, 161 U. S., 678, 40 L. Ed., 849; Frazier v. Railroad Company, 88 Tenn., 138, 12 S. W., 537; Rogers v. Railroad, 91 Fed., 299. The authority of a railroad corporation is not aided by the Act of 1907, chapter 437, Shannon's Code, section 2046a1. All these acts except the latter one are reviewed in the case of Rogers v. Railroad, 91 Fed., 299.

Railroad corporations are authorized to issue bonds and to execute mortgages to secure indebtedness (Shannon's Code, sections 1541-1542). A mortgagee in possession ordinarily may lease property pending foreclosure. See 41 C. J., 623; 9 Michie's Tenn. Ency. Dig., 172. But this does not apply to railroad corporations unless authorized by statute. See Elliott on Railroads (3 Ed.), Vol. 1, secs. 490-492.

The powers of a trustee under a mortgage include: (1) those inherent in the nature of the trust; (2) those expressly conferred upon the trustee by the trust deed, if within the power conferred

by the charter and the laws of the State. See 3 Fletcher's Cyc. of Corporations, 2313, sec. 1339.

Ordinarily, the court may authorize a receiver of a railroad to do any act within the corporate powers for its preservation or operation. See In re Walker, 14 Thomp., 281, 285, 209 S. W. 739.

It is insisted that the railroad had surrendered its charter and that the trustee leased out only the tracks, which was in effect merely a traffic arrangement, and that there is no law forbidding a trustee pending foreclosure, to rent out the tracks or forbidding one railroad from granting to another a mere right to use the tracks, depots or the like. Citing 1 Elliott on Railroads (3 Ed.), sec. 514, and Hanna v. Railroad Co., 85 Tenn., 310, 12 S. W., 718. Our cases, as well as the general law, recognize the right of one railroad to make a traffic arrangement or a track contract simply permitting the use to be made of the track, but there is a vast difference between such a contract and one where one company transfers to another its railroad and franchises through the instrumentality of a lease. If under the guise of a contract permitting one company to use the property of another, there should in fact be a transfer from one to the other of the property and franchises by way of a lease, the contract would be ultra vires and against public policy. A railroad cannot sell or lease its road and abandon its duties to the public, without legislative sanction, and it is well settled as a general rule that a corporation owning a railroad or a street railway and franchises is liable for personal injuries to animals and other property resulting from negligence and illegal acts of other corporations or individuals using its tracks for railway purposes with its permission, but without legislative authority. See Arrowsmith v. Nashville & Decatur Railroad, 57 Fed., 171; Thomas v. Railroad Company, 101 U. S., 71-82, 25 L. Ed., 950: Frazier v. Railroad, 88 Tenn., 138-153, 12 S. W., 537; 33 Cyc., 391, 703; Ryerson v. Morris Canal & Banking Co., 71 N. J. L., 381, 2 Ann. Cas., 859, note 861; notes 28 A. L. R., 141; 22 R. C. L., p. 1083, sec. 316; and page 1120, sec. 343.

There must be an expressed statutory authority authorizing a lease, and the statutory receiver of a delinquent railroad has no power to lease out the railroad. See State of Tennessee v. Railroad, 6 Lea, 370; Railroad v. Huggins & Price, 3 Bax., 177.

The receiver cannot exercise nor can the court authorize him to exercise any powers or franchises beyond those of the company to whose possession he succeeds. In re Walker, 141 Tenn., 285, 209 S. W. 739, 33 Cyc., 627. There is really no difference between a statutory receiver, and a trustee under a mortgage. The same principle governs. A court of chancery, by its inherent powers, may enlarge the powers

of its receiver, but no such powers exist as to the receiver by a contract. See State of Tennessee v. Railroad, 6 Lea, 354.

If the court had appointed a receiver and directed him to rent out the railroad, we can see that under the authorities the receiver would not be liable for carrying out the directions of the court, but there is a vast difference between a receiver appointed by the chancery court under its inherent powers, and where a trustee under a mortgage had filed a bill to ratify a lease not authorized by statute.

It is true that a corporation may surrender its charter, but even though it does the corporation shall still continue to exist for the purpose of winding up its affairs so long as may be necessary for that purpose. See chapter 28 of the Acts of 1913, of the First Extra Session, Shannon's Code, secs. 2035a6, 2071-2075. And where a corporation executed a mortgage, it cannot surrender its charter so as to defeat the rights of the mortgage creditors of its franchise and property. The purchaser at such foreclosure sale is entitled to be invested with the property and franchises of said corporation. See chapter 84 of the Acts of 1885, Shannon's Code, sec. 2050; chapter 12 of the Acts of 1877, Shannon's Code, secs. 1513-1514. Such purchaser may file the certificate with the Secretary of State, Shannon's Code, sec. 2051. Hence for all intents and purposes the corporation was in existence the same as if it had not surrendered its charter.

It will be observed that the charter states that certain parties were constituted a body politic and corporate by the name and style of Middle Tennessee Railroad Company, for the purpose of constructing and operating or leasing a railroad. By an examination of the statutes, Shannon's Code, secs. 2054 to 2060, and 2412, which authorize the granting of charters to railroads and setting out the powers of such corporations, it will be seen that no power is given the railroad to lease out its property and franchises. Where the general law authorizes the issuance of a charter with certain powers, other powers conferred by the charter not authorized by statute are not effective. See Shoun v. Armstrong, 59 S. W., 790, 796; 3 Michie's Tennessee Ency. Dig., 722-723. It will thus be seen that even though the charter states that this corporation was organized for the purpose of leasing a railroad, such powers were not authorized by statute.

The powers of the trustee under a mortgage are those inherent in the nature of the trust or those expressly conferred upon the trustee by the trust deed, provided of course they are within the powers conferred by the charter and the laws of the State. The deed of trust is not in the record, but it was stipulated that the mortgage

was in the usual form of such trust deeds, and pledged all of the property of the Middle Tennessee Railroad Company to the Nashville Trust Company to secure the payment of the bonded indebtedness of the railroad. Now we cannot say what the usual form of a deed of trust executed by a railroad to secure its creditors is with respect to authorizing a trustee to lease out its property, but we must assume that the parties complied with the law and where it was not authorized by statute no such powers were conferred upon the trustee, and if such powers had been stated in the face of the mortgage they would not have been effective. The burden is on the defendants to show that the lease was permitted by the law and valid. If not shown, the plaintiff may treat the licensee as agent of the company. See Street Railway v. Kohn, 7 Hig., 396.

Where a trustee is not authorized to lease out the property, and he is not given power to do so expressly by statute, he may be personally liable for the negligent acts of the lessee. See 33 Cyc., 718; 22 R. C. L., 1120, sec. 343.

It is contended that the chancery court has inherent jurisdiction to authorize and to ratify such a lease where the default in the payment of the mortgage indebtedness had been made and the property was turned over to the trustee for foreclosure proceedings. A court cannot authorize the trustee to execute any powers or franchises beyond those of the company to whose possession he succeeds. See 33 Cyc., 628. Where the court has no jurisdiction of the subject-matter or authority to act, it cannot be conferred by waiver or consent, and all of its orders and decrees are a nullity and may be collaterally attacked. In re Southern Lumber Co., 141 Tenn., 325, 210 S. W. 639; Sheffy v. Mitchell, 142 Tenn., 48, 215 S. W., 403; Lonas v. Chicamauga Trust Co., 139 Tenn., 228, 201 S. W., 777; Travis v. Sitz, 135 Tenn., 156, 179, 185 S. W., 1075. Hence the decree of the chancery court authorizing and ratifying the contract could add nothing to the powers of the trustee as it was beyond the court's jurisdiction to confer such powers upon the trustee when none were given him by statute, and a third person may collaterally attack such a decree for want of jurisdiction. See 34 C. J., 526, 1043-1049.

Hence we hold that the lease to Clawson Brothers was not legal and that the Trust Company as lessor is liable for the negligence of the lessees.

The second proposition is that the lessees Clawson Brothers' contract had terminated in March before the hay and straw were burned in July, and that the operation of the engine and train was without the knowledge or consent of Clawson Brothers and the Trust Company, therefore the Trust Company is not liable. They insist that if a train of one company is without legal authority

trespassing upon the tracks of another, the Company owning the road is not liable for injuries due to the negligence of those in charge of the train. (33 Cyc., 711).

We do not think that there is anything in this proposition, as there is some proof to sustain the holding of the trial judge that Clawson Brothers were operating the engines at the times when the hay and straw were destroyed by fire. The defendant Clawson was the only witness who testified for the defendants, and while he insists that Clawson Brothers ceased the operation of the road about March 12th, or 15th, 1921, yet we think his testimony is rather evasive and unsatisfactory. On cross-examination this witness was asked when he turned the road back to the Nashville Trust Company and he answered, "I do not remember the date." He was also asked if he had any statement or record of the return of the road to the trustee and he answered, "I haven't it with me." He was asked if he had such record anywhere and he answered, "I do not know whether I have or not." He was then asked, "Have you ever turned it back to them at all and had a settlement," and he answered, "Well they considered it dismissed." He insists that he called at the office of the Nashville Trust Co. at Nashville on his way to New York, and notified some man, whose name he could not recall, that they were through with the road. He stated that this person was not an officer of the Trust Company and that he thought that he would know him if he should see him; whereas other witnesses for the plaintiff testified that there was no difference in the operation of the trains on the road from the time the cattle were killed until the summer when the hay and straw were burned; that they were running the engine and cars attached over the tracks daily like they had always operated them, and the engineer told two of the witnesses that he was operating the train for Clawson Brothers. One witness testifies that they were hauling phosphate for Clawson Brothers up to the time of the fire. None of this testimony was objected to and we think it is sufficient to sustain the finding of the trial judge.

The third proposition is that there was no evidence that the cattle were killed on an unfenced track, and it is argued that the railroad is not obliged to observe the statutory precautions required by Shan. Code, section 1574, subsec. 4, if it has complied with section 1588 as to fencing the tracks. If the track is unfenced the railroad is liable. If fenced the railroad is not liable, and it is insisted that the burden of proof to show that the stock was killed or injured on an unfenced track was on the plaintiffs. Citing Railroad v. Stonecipher, 11 Pick., 311, 315, 32 S. W., 208; Buford v. Railroad, 146 Tenn., 265, 240 S. W., 759.

In actions for damages against railway companies on account of injuries to animals, ordinarily the burden of establishing negligence on the part of the defendant rests upon the plaintiff, and in many States the burden is upon the plaintiff to show that the road was not fenced unless the statute prescribed otherwise. See 33 Cyc., 1279.

Section 2 of the Act of 1891, Shannon's Code, sec. 1587, makes the railroad liable for killing or injuring live stock, but section 3 of said Act, Code 1588, provides that the railroad is not liable if the tracks are enclosed by good and lawful fence; hence there may be some question whether the burden is on the railroad to show that the tracks were unfenced, where the plaintiff shows that the stock was killed or injured by the train on the track. However this question is immaterial to a decision of this case, as the plaintiff sued for $500 damages for killing cattle and burning hay and straw while operating the Middle Tennessee Railroad, and there was a judgment for $658.87 without stating for which items the damage was awarded. The proof shows that the clover hay was worth more than the whole amount recovered, hence we say that this proposition is immaterial.

The fourth proposition is that there was no evidence that the train burned the hay and straw, that at most there was a little hearsay testimony that the defendant's engine burned the clover field and the hay stack, which is of no probative effect and is not sufficient to predicate a judgment on.

After a careful examination of the record, we are of the opinion that there is sufficient evidence to sustain the judgment. The plaintiff and another witness testified that the train crew told them that they were operating the train for Clawson Brothers when the fire burned the hay and the straw and that he should file his claim with Clawson Brothers. Another witness testified that he saw the hay burning and that the engineer told him that they were operating the engine at the time the fire occurred. The plaintiff further testified that it was during the extreme dry weather and that the hay and the straw stack were highly inflammable, and that he saw where the fire started at the railroad track and burned out over his property. He further testified that when the fire burned the clover some of his employees telephoned him in Franklin and stated that the railroad had set fire to his clover field, that he went out there in his automobile and saw the field burned over, and that they told him that the fire started immediately after the train passed. He says that he saw where the fire started down at the railroad. This evidence, as well as other testimony went in without objection and there is no assignment of error as to its admission. The fact that all of the material evidence in a case is hearsay is not available

260

after judgment, where no exception was taken to such evidence. See Southern Iron Carline v. East Tennessee, etc., Ry. Co., 42 S. W., 529. Hence we think that there is sufficient evidence to sustain the judgment. Even though it had been admitted over objection, the objection is waived unless the error was preserved in motion for new trial and assigned as error in this court. 4 C. J., 1067, sec. 3057; Kirkland v. Calhoun, 147 Tenn., 388, 248 S. W., 302; Priest v. Bank & Trust Co., 148 Tenn., 87, 251 S. W., 904.

A presumption that the fire was caused by the engine is sufficient to put the burden of proof on defendant Company, has been held to arise from evidence that the fire started up immediately upon the passing of a train and that there was no fire on the premises before, and no other apparent cause for the, fire. And in the absence of contrary proof it has been held that the presumption is that a fire adjacent to the railroad track was. occasioned by a locomotive on the track. 33 Cyc., 1367, note 60; 3 Elliott on Railroads (3 Ed.), secs. 1766-1767.

It has frequently been held that from proof that an engine passed near inflammable material immediately before the discovery of fire, there being no evidence to explain its origin, the jury may infer that the fire originated from sparks from the passing engine. 11 R. C. L., 995. As stated in 10 R. C. L., pages 861-862, sec. 3: "Courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon." Hence we hold that all the assignments of error should be overruled and that the judgment of the lower court should be affirmed, with interest from November 18, 1926. The cost of the appeal is adjudged against plaintiff in error and the sureties on the appeal bond. Executions will issue accordingly.

Faw, P. J., and DeWitt, J., concur.