HARRIMAN & NORTHEASTERN RAILROAD COMPANY, Plaintiff in Error, v. J. S. McCARTT, Defendant in Error.

Eastern Section.   April 16, 1932.

Petition for Certiorari denied by Supreme Court, October 14, 1932.

Horace M. Carr and D. O. Harris, of Harriman, for plaintiff in error, Railroad.

Cassell & Ladd, of Harriman, for defendant in error, McCartt.

CROWNOVER, J.   This action was brought by the plaintiff, McCartt, to recover damages for the alleged negligent burning, by the defendant Railroad Company, of a barn and contents, ignited by sparks from one of its engines.

The negligence averred in the declaration was the improper operation of one of its engines so as to emit large quantities of sparks and the failure to have said engine equipped with the necessary appliances to prevent its emitting sparks that caused the fire.

The case was tried by the judge and a jury. At the conclusion of the proof defendant moved the court for a directed verdict, which motion was overruled. The jury returned a verdict of $7000 in favor of plaintiff. Motion for a new trial having been overruled, defendant has appealed to this court and has assigned errors, which, when summarized, are:

(1) There was no evidence to sustain the verdict, and the court erred in overruling defendant's motion for a directed verdict.

(2) The court erred in sustaining objection to the testimony of T. M. Rodes.

(3) The court erred in sustaining objection to testimony of E. W. Jett.

(4) The court erred in sustaining objection to a question asked plaintiff, as to how much insurance he was carrying and collected on the barn and its contents.

(5) The court erred in refusing to grant defendant a new trial on the ground of newly discovered evidence.

(6) The court erred in refusing to charge the following request made by defendant.

"Before the plaintiff can recover on circumstantial evidence the circumstances must be so strong and conclusive as to exclude every other reasonable hypothesis."

J. S. McCartt owns a farm near Webster, Tennessee, about five miles east of Harriman. The Harriman & Northeastern Railroad passes his farm, and his barn was located about 268 feet from the railroad track. The barn was a large frame structure with its side nearest the railroad track not enclosed at the top except by lattice work, the strips being four to six inches apart. The upper part of the barn was largely filled with loose hay, in the lower part were stock and farming implements.

February 13, 1930, was a very cold, windy day, with occasional flurries of snow and some rain and sleet. At about 2:35 o'clock in the afternoon a train from Petros to Harriman passed along this track. People in the neighborhood saw live sparks blowing out from the smoke stack of the engine. The barn was on the east side of the track and a strong wind was blowing from the west. Fifteen minutes thereafter people passing along the highway saw that the hay was on fire in the top of the barn at the end nearest the railroad. When the fire was first discovered it was about the size of an "office desk" or "piano box." The fire increased rapidly and the structure and most of the contents were destroyed.

Nobody had been to the barn since early morning. At 8:30 in the morning Albert Brock had watered the cattle but had not smoked a pipe or anything while at the barn. The barn was not locked, only latched, but Tom Brock was working in plain view of the barn all day and saw nobody enter or leave it.

1. In this case there was sufficient circumstantial evidence to carry the case to the jury on the question of whether the fire that destroyed the barn and contents was ignited by sparks from defendant's engine No. 6127, as several witnesses testified that the engine emitted quantities of sparks. The jury found that the barn was set on fire by sparks from the engine.

The plaintiff introduced proof that early in the morning of that day a man had fed and watered the stock in the barn and had gone away; that he did not smoke a pipe or anything while at the barn; that no one else had been to the barn that day; that, although it had rained during the day, it was not raining when the 2:35 train passed; that a strong wind was blowing from the west, or somewhat northwest, when the train passed; that when the train was passing it was making a great deal of noise and sparks were blowing out of the smoke stack and being carried some distance by the wind; that the fire originated in the hay in the top of the barn at the end nearest the railroad, and was discovered about fifteen minutes after the train had passed; that the velocity of the wind was sufficient to carry sparks 400 or 500 feet from the burning barn.

A witness, Mrs. P. H. Johnson, testified that she lived about thirty-five or forty feet from the railroad track and about three-quarters of

a mile north of the barn; that she heard the train blow north of her as she left her home in an automobile; that she passed the barn and saw no sign of fire; that she returned over the same road and repassed the barn about twelve or fifteen minutes later and saw the barn on fire; and that it had not rained since noon. Other witnesses testified that the fire was discovered from ten to fifteen minutes after the train had passed, and that the wind was of sufficient velocity to carry sparks from four to five hundred feet from the barn while it was on fire. Witnesses Mrs. Guffey and Willis Johnson said it was not raining but was snowing when the train passed. Mrs. McGuffey lived with Mrs. P. H. Johnson, and testified that the train on that day "was pulling awful hard" whereas it usually rolled by; that she looked out and saw sparks coming out of the smoke stack and being blown eastward by the wind; that Mr. Rodes, the superintendent of the railroad, called on her in regard to the fire and said: "He just made a remark about it pulling so hard and I said you know it is uncommon for them to pull down grade and he said, yes, probably they had the blowers on blowing out their flues." Willis Johnson testified that the train was making a "pretty good noise" and sparks were coming out of the smoke stack.

Defendant's testimony was that the two engines, No. 6127 and 6165, which passed McCartt's place on February 13th, were in good state of repair and equipped with standard spark arresters and were being operated carefully and skillfully; that an engine in good repair does not throw out sparks to any considerable extent; that the engineer of engine No. 6127, which passed the barn at 2:35, cut the steam off at a point about 1000 feet north of this barn and coasted south down grade; that an engine never throws off sparks when the steam is cut off; that it was raining hard when the train passed.

Engine No. 6127 of defendant Railroad Company was shown to be an old engine but in good repair, and to have been inspected on February 9th and March 5th. The spark arrester was made of 3/16 x 3/4 inches wire mesh, which is the standard size of mesh for spark arresters, but which permits some sparks to escape. It is shown that if the engine did emit large quantities of sparks which were thrown some distance, it would be evidence that it was out of repair. R. S. Crawford, a machinist for the railroad, testified that if an engine throws a spark as far as fifty feet it is bound to be in bad condition.

We think there was sufficient evidence to take the case to the jury on the questions whether the engine was emitting sparks and therefore not in good repair, whether there was sufficient rain or snow to put out the sparks, and whether the wind could carry live sparks 268 feet, and whether there was sufficient circumstantial evidence to satisfy a reasonable mind that the fire was caused by sparks from the engine.

In Tennessee, proof of fire from sparks is prima facie evidence of negligence. Burke v. L. & N. R. R. Co., 7 Heisk., 451; Simpson v. R. R. Co., 5 Lea, 456; Railroad v. Fort, 112 Tenn., 432, 454, 80 S. W., 429.

"A presumption that the fire was caused by the engine is sufficient to put the burden of proof on defendant company, has been held to arise from evidence that the fire started up immediately upon the passing of a train and that there was no fire on the premises before, and no other apparent cause for the fire." Briggs v. Clawson, 8 Tenn. App., 251.

"The jury were not bound to accept the evidence of the inspector and other servants of the defendant as to the condition of the arrester if there was evidence tending to show that the sparks actually emitted in size and number were not such as could be anticipated if the condition of the arrester was as testified to." Toledo, St. L. & W. Railroad Co. v. Star Flouring Mills Co., 146 Fed., 953.

"There is a substantial agreement in all the cases, however, in holding that very slight evidence, such as proof that the sparks were of an unusual character in size, or in number, or that an unusual number of fires had been caused by sparks immediately before the fire in question, . . . is enough to make a prima facie case of negligence demanding evidence of due care in rebuttal." Toledo, St. L. & W. Railroad v. Star Flouring Mills Co., supra.

2 and 3. Defendant's second and third assignments complain of the court's sustaining objections to questions asked the witnesses, T. M. Rodes and E. W. Jett. The record does not show what these witnesses would have stated had they been permitted to answer the questions asked, therefore we cannot consider these assignments. Hood v. Grooms, 4 Tenn. App., 515.

4. The assignment that the court erred in sustaining the objection to a question asked plaintiff as to how much insurance he was carrying and collected on the barn and its contents, is not well made and must be overruled for the reason that the amount of insurance was not a question of importance in the inquiry whether the act of the defendant caused the loss or not, and constituted no defense to an action for damages. Anderson v. Miller, 96 Tenn., 35, 33 S. W., 615, 54 Am. St. Rep., 812, 31 L. R. A., 604; City of Nashville v. Mason, 7 Higgins, 453; 8 R. C. L., 557, sec. 108. The amount of insurance on the property is not evidence of its value. Insurance Co. v. National Bank, 88 Tenn., 369, 379, 12 S. W., 915. The amount of insurance collected is not evidence of the value of the property and is irrelevant.

5. Defendant assigns as error the action of the court in refusing

to grant defendant a new trial because of newly discovered evidence. At the hearing of the motion for a new trial a number of affidavits were read, but the bill of exceptions failed to show that it contained all the evidence heard on the motion for a new trial, therefore the action of the trial court cannot be reviewed on appeal. Taylor v. Robertson, 12 Tenn. App., 320; Hayes v. State, 130 Tenn., 661, 172 S. W., 296; Odeneal v. State, 128 Tenn., 60, 157 S. W., 419; Railroad v. Koonce, 4 Higgins, 1, 8; Eatherly v. State, 118 Tenn., 371, 101 S. W., 187; Ransom v. The State, 116 Tenn., 355, 96 S. W., 953.

6. The court did not err in refusing to charge defendant's special request, that before the plaintiff could recover on circumstantial evidence the circumstances must be so strong as to exclude every other reasonable hypothesis. This is not a correct statement of the law in civil cases. Negligence may be established by circumstantial evidence and by the proof of facts from which it may reasonably be inferred, or satisfying reasonable minds thereof.

"Circumstantial evidence to establish negligence, must be such that negligence can reasonably be inferred from the facts shown, or such as satisfy reasonable minds thereof; that there must be more than a mere probability that the defendant was negligent; but that the plaintiff is not bound to exclude the possibility that the accident might have happened in some other way than alleged." Nashville Ry. & Light Co. v. Harrison, 5 Tenn. App., 22; 45 C. J., 1261-5, sec. 834.

"In 29 Cyc., 622, 625, the general rule, deduced from a multitude of cases, was set forth that circumstantial evidence to establish negligence, must be such that negligence can reasonably be inferred from the facts shown, or such as to satisfy reasonsonable minds thereof; that there must be more than a mere probability that the defendant was negligent; but that the plaintiff is not bound to exclude the possibility that the accident might have happened in some other way than alleged, but is required only to satisfy the jury by a fair preponderance of the evidence that it occurred in the manner alleged. The facts must tend to exclude any other cause, but the inference of exclusion of any other cause than that alleged need not be reached beyond doubt. In McRainey v. Va. & C. S. Railway Co., 168 N. C., 570, 84 S. E., 851, it was held that where after a fair consideration of the circumstantial evidence the more reasonable probability is in favor of negligence, the case is for the jury." Nashville Ry. & Light Co. v. Harrison, 5 Tenn. App., 34.

In criminal cases circumstantial evidence, to justify the inference of guilt, must exclude to a moral certainty every other reasonable hypothesis, on the theory that the defendant's guilt must be established to the satisfaction of the jury beyond a reasonable doubt. 3 Ency. of Evidence, 92; Turner v. State, 4 Lea, 206; Phipps v. State,

3 Coldw., 344. But this rule does not apply in civil cases. Evidence in civil cases, which, taken as a whole, satisfies the minds of the jury that the fact is as they find it is sufficient. It is sufficient for the party having the burden of proof in negligence cases to make out the more probable hypothesis, and the evidence need not rise to that degree of certainty which will exclude every other reasonable conclusion. 23 C. J., 49, sec. 1792; Rippey v. Miller, 46 N. C., 479, 62 Am. Dec., 177; St. Louis, etc., Ry. Co. v. Owens, 103 Ark., 61, 145 S. W., 879; St. Louis, etc., Ry. Co. v. Moss (Texas), 203 S. W., 777.

"Proof of an essential fact must be had either direct or positive by witnesses who know the fact, or circumstantial by witnesses who know and testify to facts which tend to establish or prove the essential fact, and only when the circumstances are, in the judgment of the court or jury, such as usually or necessarily attend the essential fact are they sufficient in law to warrant a verdict, judgment or decree establishing a fact which has not been proved by direct or positive evidence." Marquet v. Insurance Co., 128 Tenn., 213, 216, 159 S. W., 733, 54 L. R. A. (N. S.), 749, Ann. Cas., 1915B, 677, L. R. A. 1915B, 749.

"The true statement of the rule is that if the evidence preponderate in favor of any contention of the plaintiff or defendant, that contention may by the jury be considered as sufficiently sustained to rest a verdict upon, and it is not necessary that the evidence should go so far as to make said contention clear and plain or establish it in a sense to make it free from doubt or uncertainty or set the minds of the jury at rest and convince them absolutely of the truth of the contention. After all the evidence that can be produced is introduced, the jury may still be unsatisfied—not convinced, their minds may not be at rest, they may not be freed from doubt, uncertainty and suspense, but still the jury may recognize that there is a preponderance of evidence, and on that they may base their verdict." Knights of Pythias v. Steele, 107 Tenn., 1, 10, 63 S. W., 1126.

We have carefully examined the charge of the court and we think that it sufficiently covers the law as hereinabove set out, and that the court should not have gone to the extent of charging the special request.

All of the assignments of errors being overruled the judgment is affirmed. A judgment for $7000 and interest from October 31, 1931, to the present, will be entered in this court in favor of J. S. McCartt and against the Railroad Company. The cost of the appeal is adjudged against the Railroad Company and the surety on its appeal bond, but the cost of the court below is adjudged against defendant Railroad Company. Executions will issue accordingly.

## OPINION ON PETITION TO REHEAR.

CROWNOVER, J. This case is again before us on petition for a rehearing, in which it is strenuously insisted that we erred in our original opinion in not reversing and dismissing the action.

First, it is insisted that we erred in saying, "People in the neighborhood saw live sparks blowing out from the smoke stack of the engine." Counsel insists that this statement is inaccurate if we meant that people saw the engine emitting sparks as it passed the barn. We attach no importance to the word "neighborhood," but used the word in the sense of vicinity or nearness to the barn. Neighborhood is a relative term, and people who live within a quarter, a half, or even a mile or two of each other in the country are in the same neighborhood, whereas one would not use "neighborhood" strictly in that sense in the city. We think the use of this term was correct, especially when we followed it up by quoting what the witnesses stated and showed that they lived within a quarter, a half and three-quarters of a mile of the barn when they saw the sparks emitted.

Second, it is insisted that we erred in saying, "that when the train was passing it was making a great deal of noise and sparks were blowing out of the smoke stack and being carried some distance by the wind." It is insisted that this meant when it passed the barn it was doing these things. We used this expression in connection with the train passing in that vicinity or neighborhood, and we followed up the expression by going over what each witness stated in that respect and also stating where the witnesses were located, hence we think there is nothing in this contention.

Third, it is strenuously insisted that we erred in not reversing the case because there was no evidence that the sparks emitted from this engine set fire to the barn. As recited in our original opinion, there was proof that the engine emitted sparks within from a quarter to three-quarters of a mile before it reached the barn; that the engine was pulling hard and made a great deal of noise while going down grade in passing Mrs. Johnson's home to such an extent that it shook the house. Another witness said that it was pulling mighty hard and was roaring within a quarter of a mile of the barn and while going down grade. The wind was blowing very hard and the fire was seen to blaze within ten or fifteen minutes after the train passed. There was no other cause of the fire shown, hence there was sufficient evidence for the case to go to the jury. Defendant's witnesses say the engine was perfect and that the spark arrester was in perfect condition and therefore it was impossible for sparks from the engine to

set fire to the barn. Therefore it was a question for the jury. The jury passed on the question and resolved the issues in favor of the plaintiff below. There was some evidence to sustain the verdict and we think there is nothing in this contention.

Fourth, it is insisted that the court erred in not considering the affidavits filed on the motion for a new trial, for the reason that after the charge of the court it was stated in the bill of exceptions "that defendant on motion for a new trial offered and read the following affidavits." There were copied several affidavits which were authenticated by the court. Then followed, "Plaintiff offered the following counter affidavits," and several were copied into the bill of exceptions; but it is nowhere shown that this was all the evidence on motion for a new trial. We are still of the opinion that this is not sufficient, as it must affirmatively appear that the bill of exceptions contained all the evidence on motion for a new trial.

> "The rule of practice is well settled in this State that the ruling of a trial judge upon a question involving disputed or controverted facts will not be reviewed by the Supreme Court where the record fails to show affirmatively that it contains all the evidence heard by the trial judge on such question; and this rule of practice obtains in respect of and applies to every part of the record pertinent to a disputed question, whether the same arises upon a motion for a new trial, plea or otherwise, equally with the facts pertaining to the general issues." Eatherly v. State, 118 Tenn., 371, 101 S. W., 187.

It results that the petition for a rehearing is denied.

Faw, P. J., and DeWitt, J., concur.