TENNESSEE CENTRAL RAILWAY COMPANY v. E. P. MELVIN, Administrator, etc.

Eastern Section.    April 9, 1927.

Petition for Certiorari denied by Supreme Court, July 15, 1927.

1. **Appeal and error.** Evidence which justified the overruling of a motion for peremptory instruction will support the verdict of a jury.

Where the court found sufficient evidence to justify overruling the motion for peremptory instructions, held there was necessarily some evidence to support the verdict of the jury.

2. Appeal and error. Minute entries of the court record may be contradicted or explained by the bill of exceptions.

Notwithstanding the recital in general terms on the minutes that the court overruled the motion for a new trial, held that the bill of exceptions showed the court in fact limited his action in overruling the assignments that the evidence preponderated against the verdict to the case alleged in the second count of the declaration.

3. Railroads. Evidence. Evidence held sufficient to sustain a judgment.

The finding that the accident occurred at a dangerous crossing and that the train approached the crossing at a reckless rate of speed, held a sufficient finding on which to predicate a judgment against the railroad.

4. Railroads. Speed alone is not sufficient to justify a verdict for negligence against a railroad.

Where evidence showed a dangerous crossing and a train travelling at a high rate of speed, the question of negligence is one for the jury and not for the court.

5. Appeal and error. The verdict of a jury must be approved by the trial court.

The verdict of a jury will not be approved by the appellate court unless it has been first approved by the trial judge.

6. Negligence. Negligence of a driver of an automobile can not be imputed to a passenger.

The negligence of a driver of an automobile can not be imputed to a passenger but the passenger is duty bound to exercise reasonable precautions for his own safety.

7. Negligence. Guest may be held guilty of contributory negligence.

In an action to recover damages for death where it was shown that deceased was a guest in a touring car, was familiar with the dangerous crossing and made no protest about the careless manner in which the driver approached the crossing, held that whether the guest was guilty of contributory negligence was for the jury.

8. Negligence. Conduct constituting ordinary care on the part of driver and guest may not be the same.

Ordinary care is required of guest and driver in an automobile, but the conduct required to fulfill that duty may differ. The guest may to some extent, but not absolutely, rely on the driver to exercise reasonable care to avoid danger.

9. Appeal and error. Requested instructions must be strictly accurate.

A trial judge can not be put in error for his refusal to give an instruction requested unless it is strictly accurate when tendered to the Court.

10. Evidence. Presumption. The presumption that in view of the instinct of self-preservation one is exercising ordinary care at the time of the accident does not exist if there is any evidence as to the action of the deceased.

The presumption arising out of the well known instinct of self-preservation that the deceased was in the exercise of ordinary care at the time of the injury which caused his death does not exist when there is any evidence to show the action of the party at the time of the accident. It exists only in those cases where there is no evidence at all in regard to the action of the party at the time he met his death.

11. Trial. Instructions. Instruction on a point not in issue properly refused.

Where the case presented no issue of negligence on the part of the railroad for failure to cut trees off of its right-of-way it was not error for the court to refuse an instruction offered by the defendants on that point.

Appeal in Error from Circuit Court, Cumberland County; Hon. J. R. Mitchell, Judge.

Reversed and remanded.

C. E. Keyes, J. W. Dorton and G. P. Burnett, of Crossville, for plaintiff in error.

Tollett and Tollett, of Crossville, for defendant in error.

FAW, P. J.   This suit was brought in the circuit court of Cumberland county, on January 22, 1924, by E. P. Melvin, administrator of the estate of Alex Farmer, deceased (hereinafter called plaintiff), against the Tennessee Central Railway Company (hereinafter called defendant), a corporation operating a line of railway through Cumberland county.

Alex Farmer was injured and died on October 8, 1923, as the result of a crossing collision between one of defendant's passenger trains and a Ford touring car in which Farmer was riding as a guest of the owner of the car, and his administrator instituted this action to recover damages for his death.

Five children and one grandchild of plaintiff's intestate survive him, and this suit is brought for their use and benefit.

The collision which caused the death of Alex Farmer occurred on Renfro's Crossing, sometimes called the "Bote Reed Crossing," where the Memphis to Bristol State Highway crosses the defendant's track at a point two or three miles east of Crab Orchard Station in Cumberland county (between Crossville and Rockwood). The general direction of both the railroad and highway in the vicinity of Renfro's Crossing is the same, and at the crossing the highway crosses the defendant's track diagonally.   The automobile in which Farmer was riding and the passenger train which collided with it were both eastbound.

The plaintiff's declaration contains three counts.   The first count is predicated on an alleged nonobservance by defendant of the "statutory precautions" prescribed by Shannon's Code, sec. 1574, subsec. 4.   The second count of the declaration is based upon an alleged failure of the defendant to discharge certain common law duties owing by it to the plaintiff's intestate as a traveler upon the highway at the crossing.

In the second count it is alleged that, by reason of obstructions to the view and the nature of the crossing and the approach thereto (which are described in detail in the declaration), the crossing where the collision occurred was very dangerous to travelers upon the highway approaching from the west (as plaintiff's intestate was), and that defendant's agents and servants did not give notice of the approach of the locomotive and train which injured plaintiff's intestate, and did not take the necessary precautions to warn

travelers along said highway of the approach of said engine and cars, and "negligently ran the said train in making said crossing at a high and dangerous rate of speed," and that "they were running said train at such a rate of speed that they were unable to stop said train before reaching said crossing after the automobile appeared upon the track of said railway."

In the third count of the declaration it is alleged that defendant negligently failed to make, furnish and maintain a good and sufficient crossing as required by the Acts of 1899, chap. 119 and 356 (Shannon's Code, secs. 1593, 1594 and 1594a) and chap. 142 of the Acts of 1875 (Shannon's Code, sec. 2417), and that the unsafe and out-of-repair condition which resulted was the cause of the collision and the resulting injuries to plaintiff's intestate.

The defendant filed a plea of not guilty to plaintiff's declaration and, upon the issues thus made, the case went to trial before a jury, but the jury failed to agree and a mistrial was entered. There were four successive mistrials of the case in the circuit court, and it was on the fifth trial that the jury agreed upon the verdict now under review on this appeal, by which verdict the jury found the issues in favor of the plaintiff and assessed his damages at $4,000.

At the close of all the evidence the defendant moved for a directed verdict in its favor, but the motion was overruled and the case was submitted to the jury, with the result above stated.

After the verdict was returned by the jury, the defendant moved for a new trial on seven grounds specified in its motion. The first assignment in the motion for a new trial below was that the evidence preponderates in favor of the defendant and against the verdict of the jury, and the second assignment in the motion was that the court erred in overruling defendant's motion for a directed verdict. The third, fourth, fifth and sixth assignments in the motion for a new trial were based on the refusal of certain special requests for instructions on behalf of the defendant and the seventh assignment in the motion was that "the verdict of the jury is so excessive as to evince passion, prejudice and caprice on the part of the jury."

The action of the trial court on the motion for a new trial and the proceedings subsequent thereto appear from the minutes of the circuit court as follows:

"Which motion having been heard and considered by the court was by him in all things overruled and disallowed, except as to the ground that the verdict of the jury was so excessive as to indicate passion, prejudice and caprice on the part of the jury, which ground of said motion was by the court sustained, and the court suggested a remittitur of $1500 from the verdict of $4,000 returned by the jury, reducing the judgment to $2500 with the proviso that

in case the plaintiff refuses to make said remittitur of $1500 a new trial would be awarded; whereupon the plaintiff made said remittitur, under protest, and excepted to the action of the court in regard to said remittitur and prayed an appeal therefrom to the next term of the Court of Appeals at Knoxville, Tennessee, which appeal was granted; and upon application of the plaintiff he is allowed thirty days to prepare and file his bill of exceptions and an appeal bond in the case.

"Thereupon the case coming on to be heard upon the verdict of the jury heretofore returned in open court, at a former day of the present term of this court, and the remittitur suggested by the court and conditionally required of the plaintiff and accepted by the plaintiff under protest, it is, therefore, ordered, adjudged and decreed by the court that the plaintiff, E. P. Melvin, as administrator of the estate of Alex Farmer, deceased, have and recover of the defendant, Tennessee Central Railway Company, twenty-five hundred ($2500) dollars, as damages for the wrongful killing of his said intestate, Alex Farmer, together with the costs of the case, for which execution may issue.

"To which action of the court in overruling its motion to set aside the verdict of the jury and award it a new trial of the case, and to the action of the court in suggesting and causing to be made said remittitur of only $1500 from the verdict of $4,000 returned by the jury, and in rendering judgment in favor of the plaintiff and against the defendant in the sum of $2500 as damages for the wrongful killing of plaintiff's intestate, Alex Farmer, the defendant excepted and prayed an appeal therefrom to the next term of the Court of Appeals at Knoxville, Tennessee, which appeal was granted and upon application of the defendant it is allowed thirty days to prepare and file its bill of exceptions and an appeal bond in the case.

"In the event of an appeal only one bill of exceptions shall be prepared and filed and the clerk is directed to send up to the Court of Appeals the original map and photograhs given as evidence and made exhibits in this case, to-wit, one map and the photographs introduced by the plaintiff and the photographs introduced by the defendant, which map and photographs are to be sent up as part of the record in this case.

"Upon motion of Tollett & Tollett a lien is hereby declared upon the judgment recovered in this case for their reasonable attorney's fees."

The respective appeals of the plaintiff and defendant were perfected and both parties have assigned errors in this court. Through a single assignment the plaintiff asserts that the court erred in requiring plaintiff to remit $1500 of the verdict for $4,000 returned by

the jury. The defendant's assignments of error are the same as those assigned in its aforesaid motion for a new trial below, with the addition of an assignment that there is no evidence to support the verdict of the jury.

The last mentioned assignment of error cannot be considered because it was not in the motion for a new trial; but this works no harm to the defendant in this case, for the reason that there is an assignment that the court erred in overruling the defendant's motion for peremptory instructions, and if there was evidence which justified the court in overruling the motion for peremptory instructions, there was necessarily some evidence to support the verdict of the jury. Southern Railway Co. v. Lewis & Adcock Co., 139 Tenn., 37, 44, 201 S. W., 131; F. W. Woolworth Co. v. Connors, 142 Tenn., 678, 222 S. W., 1053.

The jury returned a general verdict, finding the issues in favor of the plaintiff without specifying the particular count or counts of the declaration which they found to be supported by the evidence; but the trial judge approved the verdict under only one count of the declaration. This appears from the statement made by His Honor at the time he overruled the motion for a new trial, which statement is brought up in the bill of exceptions, as follows:

"The Court: This case is before the court on a motion for a new trial and various grounds are set out in the motion before the court, upon which the court is asked to grant a new trial, set aside the verdict and finding of the jury heretofore had in this case.

"I have very carefully considered the case and likewise the grounds assigned in the motion now pending before the court; the case has had a somewhat long drawn out history before the court, in that it has been tried before different juries and likewise before different judges; I believe some three trials before the very distinguished and learned judge, Hon. C. E. Snodgrass, and tried this second time before this court, before any verdict has been reached by any jury.

"In many respects the case before the court has many facts in common with the very celebrated case that occurred within the shadow almost of this court house and reported in 16 Thompson at pages 312, 313 et seq., Vol. 143 of the Tennessee Reports. I refer to the case of Vanhoy against the Tennessee Central Railroad Company and there are many features of this case that are somewhat similar to that celebrated case which was passed upon by our highest court.

"In the case at bar the accident occurred in October, 1923, on the 8th day, which resulted in the death of Alex Farmer, who sues by and through his administrator, E. P. Melvin, in this action. The deceased was a man sixty years of age, lived at a little vil-

lage some seven or eight miles, possibly, east of the scene of his killing and on the line of the Tennessee Central Railway. He had come to Crossville on the morning of October 8th in company with John and Obed Maupin and was returning at the time of his unfortunate decease, traveling in a Ford touring car, going easterly with his neighbors to his home. Without undertaking to again review the evidence introduced upon the trial, I think it is clear to the mind of the court, in view of the exhibits introduced at the trial and the testimony before the court and the jury, that this must be conceded to be a dangerous crossing. It is said in the record that the point at which the wreck occurred was down grade and that this public road crossing comes up in traveling eastwardly from behind a hill or bank and that the train emerges from a somewhat deep cut just a few feet away from this public road crossing. It seems to be fully established that there were certain obstructions growing along the right-of-way of the defendant company's track at and near the place of this collision. It is said in the proof that vegetation was green at the time and that there were leaves and bushes growing along this railroad embankment that necessarily had the effect of somewhat obscuring the vision of both the defendant company's employees, so far as the scope of their vision possibly was concerned, and likewise had a tendency to obscure the vision of those approaching this track. And I think, gentlemen, the speed of the train at that known and dangerous crossing at that particular time, in the light of the proof, was excessive. It coasted down upon this dangerous crossing which certainly must have been known to those servants of the defendant company, because it's in the proof that the fireman and the engineer on this train on this particular day, had been for many years running on this same schedule, that is for some years had been in the employ of the defendant company and had been operating this same train every other day possibly, for some years. Evidently more warnings should have been given the public in the light of the facts and circumstances surrounding the place at the time, and we are all familiar with the principle that negligence is a relative term and what would be negligence at one time or place, or even at one season of the year, might not be negligence at another time, because we have to take each particular situation in the light of the proof of each particular case to determine just what constitutes negligence.

"Evidently on that day this train was going at a rapid rate of speed and the sounding of the whistle some quarter of a mile back westward, in the mind of the court, was not sufficient warning to those passing this known dangerous crossing. Evidently on this occasion the train was going at considerable speed to have traveled

the distance it did after the scene of the accident, after the time of the accident. And so I think that due precaution was not used on the part of the employees of the defendant company in thus approaching this crossing, in view of the deep cut, the close proximity of the public road crossing to the cut and the further fact that these bushes which are indicated by the exhibits and the testimony and from the proof, shows that a traveler on the public highway had to approach within a short distance of this track before he was enabled to see up the track to discover an approaching train; and because of this and the peculiar facts and conditions that surrounded the crossing at the time and place of the alleged accident, I have no difficulty in reaching the conclusion that was reached by the jury, that the defendant company is liable, in that the train approached this crossing on that occasion at an excessive rate of speed, in view of the facts heretofore referred to.

"But in analyzing the proof and considering the familiarity of the deceased with the crossing and the fact that he' had lived and did live some few miles away and had crossed this crossing even on the day of the accident, and on the occasion when the accident did occur he was traveling as a passenger in this automobile and approaching what was likewise known to him to be a dangerous crossing, and had likewise doubtless been familiar, or should have been familiar, with the schedule of these passenger trains, he living only a few miles east of the scene of the accident, and its said in the record that on this occasion that the train was on its schedule time. I find in analyzing this proof that this deceased man was guilty of some negligence, that in the mind of the court mitigates the damages that the court would otherwise feel would be allowable, but under this last assignment in this motion for a new trial on the grounds that the finding of the jury is excessive, I am inclined, in view of the facts and circumstances of the case, and I think the mind of this court would not rest easy and satisfied, other than to enter a remittitur, reducing the judgment and finding of the jury especially in view of the age of the deceased and his expectancy of life and all the facts shown in the case with reference thereto. And, without going further into the matter, gentlemen, the court overrules and disallows each and every ground set out in the motion for a new trial, except insofar as it relates to the last assignment or the seventh ground set out in the motion. To have approached a known dangerous crossing, the location at the time and at the place, indicates to my mind such negligence on the part of the deceased that this court would not feel that a judgment in the amount heretofore assessed by the jury should be allowed, and in view of the facts the court is inclined and does enter a remittitur in the sum of $1500, reducing the judgment from

$4,000 to $2500, and with that action on the part of the court, I feel that the merits of the case have been reached.

"I have no difficulty. in finding it to be a dangerous crossing, the train approached the crossing at a dangerous and reckless rate of speed, and I likewise have no difficulty in determining that the deceased was guilty of some negligence and that such negligence that the court feels that it should' mitigate the damages to that extent and hence the action as heretofore stated, of entering a remittitur in the sum of $1500."

It is seen that, notwithstanding the recital in general terms on the minutes that the court overruled the motion 'for a new trial (except the assignment that the verdict was excessive), the court in fact limited his action in overruling the assignment that the evidence preponderated against the verdict to the case alleged in the second count of the declaration. (The minute entries may be contradicted or explained by the bill of exceptions. Percer v. State, 118 Tenn., 765, 776, 103 S. W., 780).

Upon the whole evidence, the defendant made distinct and independent contentions by way of defense to the three counts of the declaration, respectively. Defendant insisted that the undisputed proof showed that its employees and servants operating the locomotive which collided with the automobile in which plaintiff's intestate was riding fully complied with the requirements of subsec. 4 of sec. 1574 of Shannon's Code, and, therefore, defendant was entitled to peremptory instructions on the first count of the declaration.

Defendant further insisted that "there is no law which governs the speed at which trains shall be operated," and that the Railway Company "had no duty under the law to clear its crossing of any obstruction that might cut off the view of the traveler using the crossing," and therefore defendant was entitled to peremptory instructions on the second count of the declaration.

Defendant further insisted that if there was evidence that it had not maintained the crossing in question up to the requirements of the statutes pleaded in the third count of the declaration, nevertheless there was no evidence that such defective crossing was the proximate cause of the collision and the resulting injuries and death of plaintiff's intestate, and therefore defendant was entitled to peremptory instructions on the third count of the declaration.

Defendant further insisted that it appeared from the undisputed facts of the record that plaintiff's intestate was guilty of negligence which proximately contributed to produce the collision and his resulting injuries and death, and that for that reason defendant was entitled to peremptory instructions on the second and third counts of the declaration.

The foregoing contentions were specifically presented (more elaborately than we have stated them) in the defendant's motion for peremptory instructions made at the close of all the evidence, and the trial court overruled the motion as a whole, without stating his reasons for so ruling. This was, in effect, a ruling that there was some evidence, at least, to take the case to the jury under each count of the declaration, assuming that the trial court had in mind the rule that, where the facts justify it, a motion for peremptory instructions may be sustained as to one or more counts of a declaration and overruled as to others.

But it is seen from the opinion of the trial judge, hereinbefore quoted, that he approved the verdict, and overruled the assignment that the evidence preponderated against the verdict, upon his finding that the crossing where the collision occurred was "a dangerous crossing," and that "the train approached the crossing at a dangerous and reckless rate of speed." Laying aside the question of contributory negligence of the deceased, such finding constituted a sound predicate for a judgment against the defendant Railway Company. See Stem v. Interurban Railway, 142 Tenn., 494, 507-508, 221 S. W., 192, wherein the Supreme Court said:

"It is alleged in the common law count of the declaration that the defendant was operating its car over an exceedingly dangerous crossing at a high and excessive rate of speed. This allegation, supported by proof, presents a question of fact to be determined by the jury. Railroad v. Milam, supra; Chattanooga Rapid Transit Co. v. Walton, supra; Railroad v. Porter, 117 Tenn., 13-20, 94 S. W., 666, 10 Ann. Cas., 789; Bruggeman v. Illinois Central Railroad Co., 147 Iowa, 187, 123 N. W., 1007, Ann. Cas., 1912B, 876, 22 R. C. L., sec. 242, p. 1011.

"We, of course, do not mean to say that liability can be based upon rate of speed alone, but in connection with the allegations of a dangerous crossing, unless there is an absence of substantiating proof, which is not the case here, it does not lie within the province of the court to determine the question. Whether there is any evidence is to be determined by the court; the question of the preponderance of the evidence is primarily for the jury."

We think it obvious that, for the purposes of this appeal, we must refer the verdict to the second count of the declaration, for the reason that the trial judge approved the verdict under the averments of that count alone. He did not find that the averments of the first or the third count were supported by a preponderance of the evidence. The verdict of a jury will not be approved by the appellate court unless it has been first approved by the trial judge. Railroad v. Lee, 95 Tenn., 388, 32 S. W., 249; Railroad v. Neely, 102 Tenn., 700, 703, 52 S. W., 167; Cumberland Tel. & Tel. Co. v. Smithwick, 112 Tenn., 463, 470, 79 S. W., 803.

It is a logical deduction from the rule just stated that, in a case like the one here under consideration, the verdict of the jury can be referred only to that count of the declaration which the trial judge finds to be supported by a preponderance of the evidence, and the remaining counts need not be considered. In this view we have examined the record and we are of the opinion that there was evidence to take the case to the jury under the second count of the declaration, both upon the question of negligence of the defendant and the question of contributory negligence of plaintiff's intestate.

We assume that when the trial court held (in disposing of the motion for a new trial) that the deceased was guilty of "some negligence" which mitigated the damages otherwise allowable, the learned trial judge had in mind remote contributory negligence, for he had properly charged the jury that negligence of the deceased which proximately contributed to his injury would bar him from a recovery under the common law counts of the declaration.

It is argued for defendant, with much force, that, upon the undisputed facts of the record, plaintiff's intestate was, as a matter of law, guilty of negligence which proximately contributed to his injuries and death. If this be true, the judgment must be reversed.

In the case of Stem v. Interurban Railway, from which we have quoted, supra, the court (immediately following our previous quotation) said:

"With reference to the contributory negligence of the deceased, we are of opinion that this issue should also have been submitted to the jury. That the negligence of the driver of the automobile cannot be imputed to the deceased is too well settled to require the citation of authority. It is likewise true that one occupying a vehicle as a guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safety; this obligation is a continuing personal one. It is shown in the evidence here that at the time of and immediately prior to the collision the deceased was exercising no care to ascertain the existence of the railway track or the approach of the car. This would, nothing else appearing, preclude any right of recovery by her administrator. There is, however, evidence in the record tending to show that, on account of obstructions along the route traversed by the automobile, to have looked and listened would not have warned her of peril. To look and listen for cars at crossings is a positive, fixed duty, when by such precautions they may be seen or heard, and in such cases a failure of observance will bar recovery. Where, however, in exceptional cases, because of conditions not created by, nor under the control of a traveler, these precautions would not apprise one of danger, their exercise may be excused."

The facts of the Stem case, supra, differed in one material feature from the facts of the instant case. Mrs. White, the victim of the collision involved in the Stem case, was a visitor from a distant city and was wholly unfamiliar with her surroundings. She had never before passed over the crossing whereon she was killed, and there was nothing in the record from which it could be inferred that she had any knowledge or warning that she was approaching a railroad crossing. These facts are not stated in the published opinion of the court, but they appear without dispute in the record.

In the present case the deceased, Alex Farmer, was familiar with Renfro's Crossing and its surroundings. He knew the character of the approach to the crossing and that the driver of the automobile could not see a train coming from the west until the automobile was within ten or twelve feet of the track, and that the automobile must be even nearer to the track before he (Farmer) could see an approaching train from the back seat of the automobile. Farmer was the only occupant of the rear seat of the car (an open touring car) and he was in a position where he could observe the conduct of the driver and also see the road ahead and the territory adjacent to the road on either side.

John Maupin, the driver, and Obed Maupin, who occupied the front seat, testify, in substance, that Farmer did not utter a word of caution or warning to the driver, and did not say or do anything which tended to avert or minimize the danger incident to crossing the railroad track, and their testimony in this respect is undisputed.

In Berry on Automobiles, 2 Ed., sec. 318 (at page 364), it is said: "It is negligence on the part of a passenger or guest to ride in a recklessly driven machine without doing what he reasonably can to cause it to be properly driven. So, it is negligence if he observes an impending danger and fails to warn the driver, who, oblivious thereof, is carelessly incurring the same."

But the rule last above stated is subject to the qualification that the conduct which reasonable care requires of a guest in an automobile is not ordinarily the same as that which it requires of the driver. The legal standard of duty is defined in the same words, viz.: "ordinary care" or "reasonable care," but the conduct required to fulfill that duty is usually different because the circumstances of the driver and the guest are different. The guest may, to some extent, but not absolutely, rely upon the driver to exercise reasonable care to avoid danger. Huddy on Automobiles (7 Ed.), secs. 820, 823, 824; Babbitt on Motor Vehicles, (3 Ed.), sec. 1616; Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn., 487, 498-499, 178 S. W., 1117; C. & P. Telephone Co. v. Merriken (Md.), 41 A. L. R., 763.

The most recent reported utterance of our Supreme Court upon this subject is in the case of Mrs. Joseph M. Dedman et al. v. Mrs. Elizabeth Fariss Dedman, opinion by Mr. Chief Justice Green filed March 12, 1927, in which, after reviewing the authorities, the court said: "In all the cases so far decided by this court, the question of the guest's contributory negligence has been held to be one for the jury;" and the court so held in the Dedman case.

Although, in the instant case, the question is not free from doubt, we are of opinion, upon a consideration of the whole record and the applicable law, that it should not be held by the court, as a matter of law, that plaintiff's intestate was guilty of proximate contributory negligence, and it was therefore proper for that question to be submitted to the jury for its determination as a question of fact. But the inferences of negligence on the part of the plaintiff's intestate which a reasonable mind might draw from the undisputed facts disclosed by the evidence are so cogent that the defendant was entitled to have the jury properly instructed concerning the principles of law applicable to the facts of the case touching the question of contributory negligence of the deceased. This brings us to the assignments of error through which defendant complains of the refusal of the trial court to charge certain instructions specially requested by the defendant.

The court refused a request of the defendant to charge the jury that "it is negligence to knowingly go upon the railroad tracks without taking the precaution to look and listen," and such refusal is made the basis of defendant's fourth assignment of error.

When it is remembered that the deceased, Alex Farmer, was an invited guest and had no control over the automobile, we do not think the instruction thus requested should have been given without modification, and the trial judge cannot be put in error for his refusal to give a requested instruction unless it is strictly accurate when tendered to the court. Railroad v. McMillan, 134 Tenn., 490, 184 S. W., 20.

Notwithstanding the statement by the court in Stem v. Interurban Railway, supra, that "to look and listen for cars at crossings is a positive, fixed duty, when by such precautions they may be seen or heard, and in such cases a failure of observance will bar recovery," the court in that case held that the issue with reference to contributory negligence of the deceased, Mrs. White, should have been submitted to the jury. "An instruction which states as a rule of law that facts would constitute contributory negligence is erroneous and properly refused" unless the conduct stated constitutes negligence per se. 29 Cyc., p. 645. The fourth assignment of error is overruled.

In the defendant's fifth assignment of error it is asserted that the trial court erred in refusing defendant's request No. 2 for additional instructions, as follows:

" 'There is a presumption that arises out of the well-known instinct of self preservation, that the deceased was in the exercise of ordinary care at the time of the injury which caused his death, and this presumption will prevail until overcome by competent evidence.'

"This presumption may only be employed in negligence cases where there are no eye winesses of, or direct testimony as to, the conduct of the person injured at the time of the accident which leads to his death."

And (passing the sixth assignment for the present) the defendant says through its seventh assignment that the trial court erred in refusing to charge the defendant's request No. 4, as follows:

"The presumption of self preservation has no application to the facts of this case, as it appears from the proof that there are eye witnesses who testify in this record as to the conduct of the deceased at the time of the accident which resulted in his death."

We think these requested instructions (Nos. 2 and 4) should have been given to the jury. We do not think that, in law, the natural instinct of self preservation affords a presumption, in cases of death due to negligence, that the deceased was in the exercise of ordinary care at the time of the injury which caused his death, except "where there are no eye witnesses of, or direct testimony as to, the conduct of the person injured at the time of the accident which leads to his death." Tennessee Central R. Co. v. Herb, 134 Tenn., 379, 401, 183 S. W., 1011.

The court charged the jury that "without proof of the contrary, the presumption of law, arising out of the instinct of self preservation, would be, that the deceased was in the discharge of his duty and in the exercise of ordinary care at the time of the injury." Taken in connection with the remainder of the charge and in the light of the proof, this instruction was calculated to generate in the minds of the jury the belief that they might consider the presumption arising from the instinct of self-preservation in opposition to evidence touching the conduct of the deceased at the time under investigation, and determine whether the evidence was sufficient to overcome the presumption. This was an erroneous view. This subject underwent a thorough examination by Judge Vandevanter (now associate justice of the Supreme Court) in the case of Wabash Railroad Company v. De Tar, 141 Fed., 932, 4 L. R. A. (N. S.), 352, and it is there pointed out that the presumption arising from the natural instinct of self-preservation has application only in the absence of evidence, either direct or circumstantial, tending

to show the circumstances surrounding the deceased at the time his injury was received or as to how the accident occurred, and disappears when such evidence is produced.

The case law on this subject is digested in a note published in 4 L. R. A. (N. S.), 344 et seq., but, as we understand the opinion in T. C. Railroad Co. v. Herb, supra, the holding of our Supreme Court is in harmony with the opinion in Wabash R. Co. v. De Tar, supra, and there is no occasion for this court to undertake to ascertain the weight of authority in other jurisdictions. We are of the opinion that the charge of the court in the present case, with respect to the presumption arising from the instinct of self-preservation, tended to mislead the jury, to the prejudice of the defendant, upon a pivotal issue in the case, and defendant's second and fourth special requests should have been granted. The defendant's fifth and seventh assignments of error are therefore sustained.

Recurring to the defendant's sixth assignment: it is thereby asserted that the trial court erred in refusing defendant's request No. 3 for additional instructions, as follows:

"There is no law that requires a railroad company to keep the bushes or trees cut off of its right-of-way so that travelers approaching a crossing would have a clear view of the tracks for any specified distance, and negligence on the part of a railroad company cannot be predicated or based upon the failure of a railroad company to remove the trees or bushes growing upon its right-of-way."

The instruction thus requested contains a correct statement of law, and if it had been given to the jury the plaintiff would have had no cause of complaint on that account; but, on the other hand, we do not think the defendant was harmed by the court's refusal to give this requested instruction. There is no averment in the plaintiff's declaration that the failure of the Railway Company to remove the trees and bushes growing upon its right-of-way was negligence, and in the court's charge there is no statement from which the jury could have understood that the plaintiff was so insisting, and no instruction which would have justified the jury in basing a finding of negligence upon the presence of trees or bushes upon the right-of-way, or upon the defendant's failure to remove same therefrom. The sixth assignment of error is overruled.

As the judgment must be set aside, the plaintiff's assignment through which he complains of the action of the circuit court in requiring a remittitur of $1500 becomes immaterial.

It results that for the error pointed out by the defendant's fifth and seventh assignments, the judgment is reversed, the verdict of the jury is set aside, and the cause is remanded to the circuit court of Cumberland county for another trial.

The costs of the appeal will be adjudged against the plaintiff E. P. Melvin, administrator, etc. The costs heretofore accrued in the circuit court will await the future judgment of that court.

Portrum and Thompson, JJ., concur.