ALLEN et al. v. MELTON.—99 S. W. (2d) 219.

Middle Section.   March 14, 1936.

Petition for Certiorari denied by Supreme Court, December 12, 1936.

Jack Keefe, of Nashville, for Katherine Allen.
O. W. Hughes, of Nashville, for J. D. Lawrence.
C. H. Rutherford, of Nashville, for Lillian Melton.

FAW, P. J.   In the circuit court, Lillian Melton, a minor, suing by her father, A. E. Melton, as next friend, obtained the verdict of a jury and judgment thereon for $1,500, as damages, against Miss Katherine Allen and J. D. Lawrence, defendants below, and the defendants have brought the case to this court, by separate appeals in error, seeking a review and reversal of said judgment.

The parties will be designated herein as plaintiff and defendants, respectively, as they appeared on the record below.

Plaintiff's declaration as originally filed contained but one count, as follows:

"Plaintiff, Lillian Melton, by next friend, A. E. Melton, sues the defendants, Katherine Allen and J. D. Lawrence, for Fifteen Thousand ($15,000.00) Dollars damages, and for cause of action states:

"Plaintiff, Lillian Melton, is a minor seventeen (17) years of age, and brings this suit against defendants by her father, A. E. Melton, as next friend, and would show as follows:

"Plaintiff resides in Nashville, Tennessee, and is a student in the Hume-Fogg High School, one of the City schools of the City of Nashville, Tennessee, and on or about February 10, 1933, while plaintiff was attending school as a student at said Hume-Fogg High School, located at the corner of Eighth Avenue and Broadway, Nashville, Tennessee, and during certain exercises, which were had by the management of said school, and while plaintiff was standing as she was commanded to do in line of students in one of the corridors of the building preparatory to entering the auditorium along with other lines of students, many students being crowded together in said lines, and while in this position, the defendant Katherine Allen, committed an assault and battery upon her, forcibly seizing her, and jerking her out of the line of other students, and handing her over to the defendant, J. D. Lawrence, who carried her into a basement room for the avowed pur-

pose of taking her finger prints. Said defendant Lawrence seized and held plaintiff by the hand, and placed her to undergo a certain process in which he stated to her that he was taking her finger prints together with two other girls, whose finger prints said defendant Lawrence said he was taking at the same time, or on the same occasion.

"Plaintiff alleges that the defendant, Katherine Allen, and J. D. Lawrence, conspired together in the commission of said unlawful and outrageous assault and battery upon plaintiff, and agreed upon the time and place, and committed said outrage upon plaintiff in conjunction with each other as follows:

"The defendant, Katherine Allen, forcibly jerked said plaintiff out of the line of students, and handed her over to the defendant, J. D. Lawrence, who was present actively aiding and abetting in the outrage, who thereupon took plaintiff by force and superior strength and authority, and forced her away from her studies and duties at said school into said lower room, where he forcibly and unlawfully committed another assault and battery upon her by forcibly and against her will taking her finger prints.

"Plaintiff avers that the defendant, Katherine Allen, claims to have lost a pocketbook containing a certain sum of money, and plaintiff alleges that it was in furtherance of her efforts to regain and recover her said property, which prompted her to seize plaintiff, and jerked her out of line, and turned her over to the defendant, J. D. Lawrence, who undertook to take her finger prints. Said plaintiff was entirely innocent of any connection with the loss of defendant Allen's property, and was wholly unoffending at the time of the outrage, which was perpetrated in a public place where many students, teachers, employees, and others had congregated, and plaintiff was thus held up to public scorn and ridicule, shame and mortification when she was wholly innocent of any offense. Plaintiff suffered great physical pain and mental anguish, was greatly wrought upon and excited, she was greatly frightened, and she alleges that her nervous system was injured, and that she has thereby lost much in the way of her former good reputation, and name, and fame.

"Wherefore, plaintiff sues the defendants for Fifteen Thousand ($15,000.00) Dollars damages, and demands a jury to try the case."

In the midst of the trial below, plaintiff, by leave of the court, amended her declaration by adding a second count thereto, which is, in its averments of matters of fact, substantially the same as the original declaration, with the addition of certain averments characterizing the assault and battery by Miss Allen as wanton and malicious, and elaborating the description of the alleged conspiracy and the alleged assault and battery by Lawrence and its consequences, as follows:

"the defendant, Katherine Allen, with the reckless and negligent disregard of the rights of plaintiff did wantonly and maliciously seize and jerk her out of the line of other students, and hand her over to the defendant, J. D. Lawrence, who further aggravated the assault and battery, and the humiliation of plaintiff by carrying her into a basement room for the avowed purpose of taking her finger prints, and upon reaching the room forced plaintiff to undergo the humiliating process of having her finger prints taken, together with one other girl whose finger prints were taken at the same time, and on the same occasion.

"Plaintiff alleges that the defendant, Katherine Allen and J. D. Lawrence, conspired together in the commission of said unlawful and outrageous assault and battery upon the plaintiff, and agreed upon the time and place with reckless disregard to the rights of plaintiff, committed said outrage upon plaintiff in conjunction with each other, and in a wanton and malicious manner, which subjected plaintiff to the ridicule and scorn of her school-mates, whose gibes and jeers she had to face for the remainder of the year, or until June of the same year."

But it should be observed that said "second count" is a suit for punitive, or exemplary, damages alone. In the first paragraph thereof it is stated that "Plaintiff . . . sues . . . for another $15,000.00 as punitive damages," and in the last paragraph that "plaintiff sues the defendants for another $15,000.00 for punitive, or exemplary, damages, because of the reckless, negligent, wanton and malicious disregard with which this assault and battery was committed."

The case was tried to a jury upon the issues made by a plea of not guilty on behalf of both defendants to plaintiff's declaration—the order allowing the aforesaid amendment directing that the defendants' plea as filed would "stand as to said amended declaration."

A motion for peremptory instructions on behalf of Miss Katherine Allen was made and overruled at the close of plaintiff's evidence in chief, and was renewed and again overruled at the close of all the evidence.

The jury found the issues in favor of the plaintiff and assessed her damages in the sum of $1,500, and thereupon the court rendered judgment for the plaintiff and against the defendants for $1,500 and all the costs of the cause.

A separate motion for a new trial on behalf of each of the defendants was made and overruled, and an appeal in the nature of a writ of error on behalf of each defendant was prayed for, granted, and perfected.

Each of the defendants has filed a separate assignment of errors in this court. Eighteen alleged errors are assigned by defendant Miss Allen, and ten by defendant Lawrence.

Before taking up the consideration of the assignments of error, a general statement of the circumstances out of which this litigation arose will be made.

On February 10, 1933, the plaintiff, Lillian Melton, then seventeen years of age, was a member of the senior class at Hume-Fogg High School in the city of Nashville. Defendant Miss Katherine Allen was at that time, and had been for a period of sixteen years theretofore, a teacher in the Hume-Fogg High School.

Defendant Lawrence was a Sergeant in the United States Army detailed as drill master for a "battalion" of students at the Hume-Fogg High School. Plaintiff's desk was in the "session room" over which Miss Allen presided. About forty-five or fifty other "seniors" from sixteen to eighteen years of age, both boys and girls, had their desks in Miss Allen's session room. There were eighteen hundred pupils attending Hume-Fogg High School.

Two or three days prior to February 10, 1933, Miss Allen left her pocketbook, containing $96.85 in money, in a restroom, used by female students and teachers, near her session room. About thirty minutes later she discovered that she did not have her pocketbook, and it was found, apparently secreted, in or near the restroom but the money had been removed and was never found, although the identity of the person who took the money was discovered sometime after the events involved in this case.

Miss Allen reported her loss to Mr. Srygley, superintendent of city schools of Nashville, and to Mr. Kirkpatrick, principal of Hume-Fogg High School, and a notice concerning it was posted on a bulletin board in the schol building. At the instance of Mr. Srygley, city detectives promptly visited the building, but the character or extent of their investigations is not disclosed by the record, further than that they seem to have been fruitless.

Some of the teachers in the building, having the impression that defendant Lawrence "had been successful in obtaining lost and stolen property," asked him to help Miss Allen find her stolen money, and he said that he would "be glad to help." Later (on February 9th), Miss Allen and Lawrence had a brief conversation in passing, in which she told him what "the teachers had said," and he told her he would do what he could. Then, in the afternoon of the same day (February 9th), Sergeant Lawrence went to Miss Allen's session room, while she was alone and engaged in "correcting papers," and asked for and obtained from her the names of all persons she had seen in the vicinity of the restroom about the time she left her pocketbook there, which included,

among others, two of the students who had desks in Miss Allen's session room, viz., the plaintiff Lillian Melton and Helen Ring.

On the following morning (February 10th), defendant Lawrence went to Miss Allen's session room and had a conversation with her. Plaintiff was seated in the room and saw Sergeant Lawrence talking with Miss Allen, but plaintiff states that she did not hear any of the conversation, save one brief statement of Miss Allen, which Miss Allen denies that she made.

February 10, 1933, was what was known at Hume-Fogg High School as "yellow card day," when the students were assembled in the auditorium for the purpose of receiving their "report cards" and information as to whether they were "promoted," and (a few minutes after the last-mentioned conversation between Miss Allen and Sergeant Lawrence) the students in Miss Allen's session room were (as was customary on such days) lined up "two and two" in alphabetical order, and marched to the auditorium on an upper floor of the building. As this column, accompanied by Miss Allen, was marching along the corridor (on the ground floor), it passed Sergeant Lawrence, who stated to Miss Allen that he would like to speak with the young ladies whose names she had given him, if they were in the line. Thereupon, Miss Allen informed plaintiff and Helen Ring that Sergeant Lawrence wanted to see them, or wanted to speak with them, and directed or requested them to step out of the line, which they did, and the column passed on, whereupon they (plaintiff and Helen Ring) went with Sergeant Lawrence to a basement room in the building, where he took their fingerprints, stating to them at the time that they were not suspected of taking Miss Allen's money; that he knew they didn't do it.

(The manner in which Miss Allen took plaintiff out of the marching column is a matter of dispute in the evidence, and has not been stated for the reason that we have thus far endeavored to state only undisputed facts stated in the record.)

We shall not undertake to dispose of the assignments of error in the order of their assignment.

The first assignment of each of the defendants is that there is no evidence to sustain the verdict.

█ Defendant Allen's third assignment is that the trial court erred in overruling her motion for peremptory instructions made at the close of the plaintiff's evidence. This latter assignment is overruled, for the reason that defendant Allen waived her motion for peremptory instructions made at the close of plaintiff's evidence by thereafter putting on witnesses in her own behalf. Life & Casualty Insurance Co. v. Robertson, 6 Tenn. App., 43, 56, and other cases there cited.

But Miss Allen's fourth assignment is that the court erred in overruling her motion for peremptory instructions made at the close of all the evidence.

However, certain questions arise on the record which it is necessary to first consider in order to determine whether a direct ruling may be made on the assignments to which we have heretofore referred.

■■ The trial judge admitted to the jury, over the objection of the defendant Allen, testimony of plaintiff, Lillian Melton, that Sergeant Lawrence told her and Helen Ring, at the time he took their fingerprints and in the absence of Miss Allen, that Miss Allen told him to take their fingerprints. The admission of the testimony of plaintiff just stated is the basis of defendant Allen's ninth assignment of error.

The trial judge also admitted to the jury, over the objection of defendant Allen, testimony of Mrs. Melton, plaintiff's stepmother, that Sergeant Lawrence came to her home at some indefinite time after the occurrences which are the subject-matter of this lawsuit, and, while there, and in the absence of Miss Allen, stated that Miss Allen told him to take plaintiff's fingerprints.

The admission of the testimony of Mrs. Melton just stated is the basis of defendant Allen's eighteenth assignment of error.

It is a settled rule that: ''When an unlawful conspiracy or combination is established, everything said, written, or done by either of the conspirators in the execution or furtherance of the common purpose is deemed to have been said, done, or written by everyone of them, and may be proved against each and all of them.'' Jones on Evidence (2 Ed.), vol. 2, section 943, p. 1739.

But it is equally well settled that, where a conspiracy is alleged, it must be first proved, by other evidence, that a conspiracy existed at the time the declarations were made, before such testimony of the alleged conspirators is admissible. Id.

Miss Allen testified very positively and unequivocally, in substance, that she did not tell Sergeant Lawrence to take plaintiff's fingerprints; that she had no agreement or understanding with him that he would take plaintiff's fingerprints; that she did not know that it was his purpose or intention to take plaintiff's fingerprints; and that she had no knowledge or information that he had taken them until so informed by plaintiff's foster parents several hours after the occurrence; and there is no evidence in the record which reasonably tends to contradict her testimony as to these matters, except the aforementioned incompetent testimony of plaintiff and Mrs. Melton.

In other words, there is no evidence of the conspiracy alleged in plaintiff's declaration, except said incompetent testimony of

plaintiff and Mrs. Melton challenged by Miss Allen's ninth and eighteenth assignments, supra.

■ There was an additional reason for the exclusion of Mrs. Melton's testimony that Sergeant Lawrence said Miss Allen told him to take plaintiff's fingerprints, and that is that: "Even if a conspiracy is shown aliunde, the declarations of one conspirator are not admissible against the other, if made after the common design is accomplished or abandoned." Jones on Evidence (2 Ed.), vol. 2, section 943, p. 1740; Sweat v. Rogers, 6 Heisk., 117, 121; Strady v. State, 5 Cold., 300, 308, 309; Riggs v. State, 6 Cold., 517.

Defendant Allen's ninth and eighteenth assignments of error are sustained; and, in the further consideration of the case, we will proceed on the assumption that there was no evidence to support the plaintiff's averments of an unlawful conspiracy between the two defendants.

■ By making her motion for peremptory instructions, defendant Allen did not waive exceptions that she had reserved to the action of the trial judge in his rulings against her on questions of evidence; and she was entitled to rely thereon in her motion for a new trial below, and to assign errors thereon in this court, along with her assignment upon the action of the court in overruling her motion for peremptory instructions. King v. Cox, 126 Tenn., 553, 568, 151 S. W., 58.

■ It next becomes necessary to inquire whether the trial judge approved the verdict of the jury, for this court is without power to review the judgment unless the trial judge has approved the verdict. Tel. & Tel. Co. v. Smithwick, 112 Tenn., 463, 79 S. W., 803, and cases there cited; Spoke & Handle Co. v. Thomas, 114 Tenn.. 458, 86 S. W., 379; Vaulx v. Tennessee Cent. Railroad Co., 120 Tenn., 316, 108 S. W., 1142; Tenn. Central Railway Co. v. Melvin, 5 Tenn. App., 85, 94. The reasons for this rule are fully stated in the opinions just cited, particularly in Tel. & Tel. Co. v. Smithwick, and need not be repeated here.

Defendant Miss Allen asserts, through her second assignment, that, "The Court erred in refusing to weigh the evidence himself;" and, for support of this assignment, points to a statement of the trial judge (made in the course of a colloquy between the court and the attorney for Miss Allen at the hearing of her motion for a new trial), with reference to the evidence in the case, that "if the jury believed it I will believe it, every word of it." If nothing more appeared, the above-quoted statement of the court would sufficiently indicate that the trial court did not discharge his duty as the "thirteenth juror," and "weigh the evidence;" but, after a question by counsel, evidently intended to ascertain the meaning of the court's statement in question, the court said: "Some evidence was enough for the jury; but I think the preponderance of

the evidence in this case was in favor of this technical assault and battery; you do not have to hit a woman to make an assault and battery on her."

The trial judge concluded the hearing of Miss Allen's motion upon the facts of the case and the amount of the damages, with the following statement: "The actual damages wasn't much, of course; maybe nothing; but if there was any damage at all it was punitive damages. I am going to overrule the motion." Thereafter, the trial judge prepared a written statement of his reasons for overruling Miss Allen's motion for a new trial, which was entered on the minutes of the court as a part of the record of the cause, and which, so far as it relates to the subject-matter of the present discussion, is as follows:

"The motion for a new trial in this case is overruled because there is sufficient evidence upon which to base a verdict in favor of the plaintiff, and the verdict is not excessive.

"It is true that there was little or no physical damage done; but the plaintiff sued for punitive damages, and I think from the evidence adduced in the case that while a teacher, under ordinary circumstances, has a right to correct pupils for misbehavior, even to the extent of inflicting reasonable corporal punishment, it is quite a different thing to jerk or force a female student, eighteen years of age, out of the line of march and turn her over to a Federal Officer to have her finger prints taken upon a charge of larceny of the teacher's purse containing about $96.00, without any probable cause whatever being shown in the evidence, and this too in the presence of numerous other people. There being no warrant supported by affidavit for plaintiff's arrest or other indication of the plaintiff's guilt, the transaction appearing to the Court to be an aggravated case of oppression on the part of the defendant teacher and the defendant Federal Officer, Sergeant Lawrence, whose duty seemed to be to drill the students in certain Army tactics required in Hume-Fogg High School.

"The plaintiff was acknowledged by the defendant not to be guilty of the theft; but the guilty party was found and a portion of the money was actually recovered. Therefore, I cannot say that $1,500 punitive damages is excessive under the circumstances."

It is seen that the trial judge found that the proof showed merely a "technical assault and battery;" that plaintiff suffered no physical injury, and suffered no damage at all, except "punitive damages;" and that $1,500 punitive damages was not excessive under the circumstances.

Obviously the learned trial judge found that the weight of the evidence would not support a verdict for any sum as "actual damages," and he approved the verdict solely upon the ground that

"under the circumstances," plaintiff was entitled to recover of both defendants $1,500, as "punitive damages."

It is thus seen that we must treat the verdict and judgment as a recovery of $1,500 *for punitive damages alone,* as it was in that aspect only that the trial judge approved the verdict and rendered judgment thereon.

In Tennessee, and in a large majority of the other states of the Union, exemplary, or punitive, damages, as a warning to other wrongdoers and as a punishment to the defendant, may be recovered *in addition to compensatory damages.* Sedgwick on Damages (9 Ed.), vol. 1, section 360, p. 706; Polk v. Fancher, 1 Head, 336, 340; Cox v. Crumley, 5 Lea, 529, 533; Louisville, etc., R. R. Co. v. Guinan, 11 Lea, 98, 102, 47. Am. Rep., 279; Hostetter v. Vaden, 13 Tenn. App., 454, 456.

The soundness of the doctrine under which exemplary damages may be allowed was doubted in the case of Dougherty v. Shown, 1 Heisk., 302, 305, 306; but it was maintained in that case under the rule of stare decisis, and it has since been regarded as the settled law of this state. See cases cited, supra.

But "actual damage must be found as a predicate for the recovery of exemplary damages." Sutherland on Damages (3 Ed.), vol. 2, section 406, p. 1129.

"It is held in most jurisdictions that if the plaintiff has suffered no actual loss, he cannot maintain an action merely to recover exemplary damages. A plaintiff has no right, the courts say, to maintain an action *merely* to inflict punishment; exemplary damages are in no case a right of the plaintiff and cannot, therefore, become a cause of action." Sedgwick on Damages, supra, section 361, pp. 708, 709. To same effect, see Boardman v. M. Grocery Co., 105 Iowa, 445, 451, 75 N. W., 343; Schippel v. Norton, 38 Kan., 567, 572, 16 P., 804; Cole v. Gray, 70 Kan., 705, 707, 79 P., 654; Sondegard v. Martin, 83 Kan., 275, 111 P., 442; Stacy v. Portland Publishing Co., 68 Me., 279; Jones v. Matthews, 75 Tex., 1, 12 S. W., 823; Carson v. Texas Installment Co. (Tex. Civ. App.), 34 S. W., 762; Meidel v. Anthis, 71 Ill., 241, 244; Duffy v. Frankenberg, 144 Ill. App., 103, 107; Thouron v. Skirvin, 57 Tex. Civ. App., 105, 122 S. W., 55, 58; Hilfrich v. Meyer, 11 Wash., 186, 39 P., 455; Maxwell v. Kennedy, 50 Wis., 645, 7 N. W., 657, 659; 2 R. C. L., page 583, par. 63.

"It is well settled that where the damage to the plaintiff is merely nominal, that is, where a right is invaded, and there is no evidence of actual damage, there is no foundation upon which exemplary damages can attach or rest." Kuhn v. Chicago, etc., R. Co., 74 Iowa, 137, 141, 37 N. W., 116, 118. Accordant: Girard v. Moore, 86 Tex., 675, 676, 26 S. W., 945; Seal v. Holcomb, 48 Tex., Civ. App., 330, 107 S. W., 916, 918; Lacy v. Gentry (Tex. Civ.

App.), 56 S. W., 949, 950; Stewart v. Smallwood, 46 Tex. Civ. App., 467, 102 S. W., 159, 160; Adams v. City of Salina, 58 Kan., 246, 250, 48 P., 918; First National Bank v. Kansas Grain Co., 60 Kan., 30, 33, 55 P., 277; Stacy v. Portland Publishing Co., supra; Sondegard v. Martin, supra.

The principle that "actual damage must be found as a predicate for the recovery of exemplary damages" was recognized as sound by this court in Stepp v. Black, 14 Tenn. App., 153, 166, wherein it was said:

"It is insisted that the instruction as to punitive damages was nowhere qualified by a statement that compensatory damages are a condition prerequisite or precedent to the allowance of punitive damages. This contention is not sustainable. The court instructed the jury that if they should find that the plaintiff was entitled to recover, then they should award him such damages as would reasonably compensate him for the injury he had sustained. Then followed a thorough statement of the elements of such compensatory damages. Then followed the aforesaid instruction as to allowance of punitive damages in the discretion of the jury. From these elaborate instructions the jurors, as intelligent men, could not have derived the notion that liability for punitive damages could be predicated upon some other ground than that which warranted the award of compensatory damages. We think that the jurors could have no other impression than that there must be liability for compensatory damages as preceding any liability for exemplary damages."

In the case of Stacy v. Portland Publishing Company, supra, the Supreme Court of Maine stated the reasons for the rule here under discussion, as follows:

"There is no room for punitive damages here. There is no foundation for them to attach to or rest upon. It is said, in vindication of the theory of punitive damages, that the interests of the individual injured and of society are blended. Here the interests of society have virtually nothing to blend with. If the individual has but a nominal interest, society can have none. Such damages are to be awarded against a defendant for punishment. But, if all the individual injury is merely technical and theoretical, what is the punishment to be inflicted for? If a plaintiff, upon all such elements of injury as were open to him, is entitled to recover but nominal damages, shall he be the recipient of penalties awarded on account of an injury or a supposed injury to others beside himself? If there was enough in the defense to mitigate the damages to the individual, so did it mitigate the damages to the public as well. Punitive damages are the last to be assessed, in the elements of injury to be considered by a jury, and should be the first to be rejected by facts in mitigation."

With reference to the above quotation from the Maine Supreme Court, the Supreme Court of Wisconsin (in Maxwell v. Kennedy, supra) said:

"This reasoning is so clear and satisfactory that it is more creditable to appreciate and adopt it than to attempt an original expression of the same general idea in language which would be likely to be less terse and more obscure."

In Smith v. Dye (Tex. Cix. App.), 51 S. W., 858, the court said:

"We find no error in the charge of the court, nor in the manner in which the judgment adjusted the differences between the parties. The judgment, in this respect, we think is in accord with the verdict; but it will have to be reversed because of a fundamental error, apparent upon the record, which is not assigned.

"It is well settled by numerous cases in this state upon the subject that there must be some finding of actual damages, in order to support a judgment for exemplary damages. It is true, in this case the jury did return a verdict for actual damages, which, if it had not been remitted, would have supported the judgment for exemplary damages; but before the judgment was entered the appellee remitted his actual damages, the effect of which was to deprive the court of the power to render judgment for the exemplary damages. For the reasons stated, the judgment of the court below will be reversed, and the cause remanded."

In the second count of her declaration in the instant case, the plaintiff sued for "punitive damages" alone, which "do not constitute the basis of a cause of action but are mere incidents to it" (2 R. C. L., p. 583), and no recovery could be had under that count.

But, as a matter of pleading, it is probable that the first count contained sufficient averments to support a verdict for punitive damages in addition to, or by way of enhancement of, actual damages, as it is not necessary that punitive damages be claimed "in so many words" in the declaration. Railroad v. Ray, 101 Tenn., 1, 6, 46 S. W., 554.

The jury returned a general verdict—merely finding "the issues joined in favor of the plaintiff" and assessing "the damages in the sum of $1,500"—without indicating the particular count or counts of the declaration on which their verdict was based, or whether the sum assessed as damages represented actual damages or punitive damages or both, or, if both, in what proportion. In this condition of the record, "the verdict of the jury can be referred only to that count of the declaration which the trial judge finds to be supported by a preponderance of the evidence." Tenn. Cent. Railway Co. v. Melvin, 5 Tenn. App., 85, 95.

The trial judge did not, *in terms*, make a finding as to which count of the declaration was supported by the evidence, but the reasonable inference from his findings is that he referred the verdict to

the second count, as he found that there were no actual damages and·he approved the verdict for $1,500 as punitive damages.

However, the question as to which of the two counts of the declaration the verdict should be referred is not controlling. The infirmity in the verdict and judgment, as they come to this court, is that, if the jury intended to include any actual damages in the sum assessed, such assessment of actual damages was expressly disapproved by the trial judge, and the court was, therefore, without power to render judgment for any sum as punitive damages.

Obviously this is not a case where the dissatisfaction of the trial judge referred merely to the *amount* of the damages. See cases cited in Vaulx v. Tennessee Cent. Railroad Co., supra, 120 Tenn., 316, at page 321, 108 S. W., 1142.

It results that the judgment must be reversed, the verdict set aside, and the cause remanded for a new trial.

Our conclusion just stated would seem to make it unnecessary for this court to further consider the case; but, assuming that it is proper for us, as an intermediate appellate court, to do so, we will briefly dispose of the assignments of error not heretofore specifically mentioned.

Defendant Allen's fifth assignment and the fourth and fifth assignments of defendant Lawrence complain of certain excerpts from the charge of the court to the jury, which instructions might have been proper if there had been evidence of the conspiracy charged in the declaration, but in view of the positive testimony of Miss Allen that the "fingerprinting" was done without her agreement, consent, or knowledge, and the absence of evidence to the contrary (as hereinbefore pointed out), the instructions thus challenged were erroneous. An instruction which assumes that there is evidence tending to prove certain facts, when there is no such evidence, is erroneous. 64 C. J., p. 785, section 666; Railroad Co. v. Satterwhite, 112 Tenn., 185, 205-208, 79 S. W., 106; J. M. James Co. v. Bank, 105 Tenn., 1, 17, 58 S. W., 261, 51 L. R. A., 255, 80 Am. St. Rep., 857; O'Rourke v. Street Ry. Co., 103 Tenn., 124, 130, 52 S. W., 872, 46 L. R. A., 614, 76 Am. St. Rep., 639; Chicago, R. I. & P. Railroad Co. v. Houston, 95 U. S., 697, 703, 24 L. Ed., 542.

Defendant Allen's fifth assignment and defendant Lawrence's fourth and fifth assignments are sustained.

Defendant Allen's sixth assignment and defendant Lawrence's sixth assignment are overruled. These assignments complain of a part of the last paragraph of the court's charge to the jury, and we find no prejudicial error therein.

Miss Allen's seventh and eighth assignments are overruled. They complain of the admission of certain specified testimony of the plaintiff Lillian Melton, admitted over the objection of defendant Allen.

The testimony set out in the seventh assignment was immaterial, but harmless; and the testimony set out in the eighth assignment was competent. Carsten v. Northern Pac. Railroad Co., 44 Minn., 454, 47 N. W., 49, 9 L. R. A., 688, 689, 20 Am. St. Rep., 589.

Miss Allen's tenth and eleventh assignments are overruled. These assignments challenge the action of the trial judge in sustaining objections of plaintiff's attorney to questions asked witnesses by the attorney for defendant Allen. Under well-settled rules, error cannot be predicated upon these rulings of the trial judge, for the reason that the record does not show what the answers of the witnesses would have been if they had been permitted to answer the questions.

Defendant Allen's twelfth assignment is that the court erred in making prejudicial remarks against defendant's counsel in the presence of the jury, thereby precluding a fair and impartial trial for the defendant; and her thirteenth assignment is that the court erred in allowing plaintiff's counsel to make improper, inflammatory, and unfair argument before the jury over defendant's objection, all calculated to prejudice the jury against defendant's counsel, and resulting in an unfair trial for defendant.

These latter assignments contain a number of specifications, and are not lacking in particularity of averment, all of which appeared in corresponding assignments in Miss Allen's motion for a new trial below; but a motion for a new trial is merely a pleading, and the statements therein do not afford ground for a new trial unless otherwise supported by the record. Sherman v. State, 125 Tenn., 19, 49, 140 S. W., 209; Richmond, etc., Foundry v. Carter, 133 Tenn., 489, 493, 182 S. W., 240; Tennessee Cent. Railroad Co. v. Vanhoy, 143 Tenn., 312, 334, 226 S. W., 225; Crosswy v. State, 157 Tenn., 363, 374, 8 S. W. (2d), 486; Overton v. State 165 Tenn., 575, 579, 56 S. W. (2d), 740. The alleged occurrences set forth in Miss Allen's twelfth and thirteenth assignments, supra, were matters of controversy at the hearing of the motion for a new trial below, and the bill of exceptions contains a number of affidavits with respect to these matters, but it does not show that it contains all the evidence heard on the motion for a new trial; hence we must assume that there was evidence to support the finding of the circuit judge upon questions of fact arising on the hearing of the motion. Ransom v. State, 116 Tenn., 355, 366, 96 S. W., 953; Lowry v. Southern Railroad Co., 117 Tenn., 507, 523, 101 S. W., 1157; Eatherly v. State, 118 Tenn., 371, 101 S. W., 187; Odeneal v. State, 128 Tenn., 60, 66, 157 S. W., 419; Hayes v. State, 130 Tenn., 661, 668, 172 S. W., 296; Ingolsby v. Burnett, 163 Tenn., 173, 177, 40 S. W. (2d), 1013; Louisville & N. Railroad Co. v. Koonce, 4 Tenn. Civ. App., 1, 10; Rosenbaum v. Herron, 5 Tenn. Civ. App., 630, 639; Cofer v. Cofer, 1 Tenn. App., 538, 541, 542; Provident Life & Ac-

cident Insurance Co. v. Gibson, 5 Tenn. App., 516, 517; Taylor v. Robertson, 12 Tenn. App., 320, 325, 326; Harriman & N. E. Railroad Co. v. McCartt, 15 Tenn. App., 109, 114, 117.

Miss Allen's fourteenth and seventeenth assignments and defendant Lawrence's third assignment are too general and indefinite to constitute valid assignments of error under the rules of this court and the Supreme Court. See Rules, William's Annotated Code, vol. 7, pp. 546 and 526.

Through defendant Allen's fifteenth assignment and defendant Lawrence's ninth and tenth assignments it is asserted that the verdict is excessive, and so excessive as to evince passion, prejudice, partiality, and caprice.

In view of our conclusion that the case must be retried for the reasons we have stated, there is no predicate in the record for the expression of an opinion by this court as to whether the verdict of the jury was or was not excessive, etc.

The defendants assert (through defendant Allen's sixteenth assignment and defendant Lawrence's seventh assignment) that the trial court erred in submitting to the jury the question of punitive damages. The instruction thus challenged was as follows:

"The plaintiff has also sued for punitive damages over and above her actual damages, which you may, in your discretion allow, if you find that the defendant, or defendants as the case may be, acted in a wilful and wanton manner, in utter disregard of the plaintiff's rights."

We find no error in the instruction just quoted, and the two assignments through which it is assailed are overruled. Railroad v. Ray, supra, 101 Tenn., 1, at page 6, 46 S. W., 554.

Through his second assignment of error defendant Lawrence asserts that the trial court erred in overruling the fourth ground of his motion for a new trial, which was as follows:

"There is a misjoinder of actions in these cases, in that the matters complained of against the defendant J. D. Lawrence are wholly separate and distinct from the action complained of against the defendant Miss Katherine Allen."

On the face of the pleadings there was no "misjoinder of actions," for the reason that it was therein averred that the things done to plaintiff's injury and damage were the result of an unlawful conspiracy between the two defendants.

"A 'civil conspiracy' may be defined to be a combination between two or more persons to accomplish by concert of action an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means; the damage caused being the gist of any action." McKee v. Hughes, 133 Tenn., 455, 459, 181 S. W., 930, 931, L. R. A. 1916D, 391, Ann. Cas. 1918A, 459; Tennessee Publishing Co. v. Fitzhugh, 165 Tenn., 1, 4, 52 S. W. (2d), 157.

"As the gist of the modern civil action of conspiracy is the damage, and not the combination, the authorities sustain the proposition that ordinarily a verdict may be rendered against one of the defendants even though no conspiracy is proved." 5 R. C. L., p. 1106, par. 56. See, also, Boston v. Simmons, 150 Mass., 461, 463, 23 N. E., 210, 6 L. R. A., 629, 15 Am. St. Rep., 230; note, 14 Ann. Cas., 1144; Carpenter v. Lee, 5 Yerg., 265, 266. This rule applies to cases where it is alleged that the defendants conspired to commit a tort of such a nature that it was capable of being committed by one person alone, and the proof shows that there was no conspiracy and the alleged tort was committed by one of the defendants. Note, 19 Ann. Cas. 1254, 1255.

In the case at bar, the objection on the ground of "misjoinder of actions" (meaning, we infer, misjoinder of parties) was made by defendant Lawrence alone, and was not made by him until the motion for new trial after verdict. He will not be permitted to thus experiment with the jury, and then, after an adverse verdict, obtain a new trial on the ground that the action against him had been improperly joined and tried with the action against Miss Allen. His second assignment of error is, therefore, overruled.

The eighth assignment of defendant Lawrence is that the trial court erred in overruling the eleventh ground of his motion for a new trial, which was as follows: "The defendant J. D. Lawrence, through no fault of his, had no notice of the trial of this cause and therefore was not represented on the trial of this cause either by himself or by an attorney."

A plea of the general issue—not guilty—was seasonably filed on behalf of defendant Lawrence, but, so far as appears, he was not present in person or represented by counsel during the trial before the jury. After the verdict, a motion for a new trial was filed for him by able counsel, who represented him at the hearing of the motion and has filed assignments of error and brief for him in this court.

It is seen that the eleventh ground of defendant Lawrence's motion for a new trial (on which his seventh assignment of error is based) presented an issue of fact, and, in support thereof, he filed and submitted to the trial court affidavits of himself and others with a view of proving that his failure to attend the trial in person and to be represented by counsel at the trial was without culpable negligence on his part.

But his motion for a new trial was overruled by the trial judge, and we must assume that there was evidence to support his findings on the issue of fact presented by the eleventh ground thereof, as the bill of exceptions does not show that it contains all the evidence heard on the motion for a new trial. See cases hereinbefore

cited in disposing of defendant Allen's twelfth and thirteenth assignments of error.

It results that, for the errors hereinbefore pointed out, the judgment of the circuit court is reversed, the verdict of the jury is set aside, and the cause will be remanded to the circuit court of Davidson county for a new trial.

The costs of the appeal will be adjudged against A. E. Melton, the next friend of the plaintiff. The costs accrued in the circuit court will abide the future judgment of that court.

Crownover and De Witt, JJ., concur.